HALEY, mayor, *et al. v.* BAILEY.

No. 15200. JULY 3, 1945.

*A. N. Durden* and *Howell Cobb,* for plaintiffs in error.

*S. B. Lippitt,* contra.

WYATT, Justice. J. M. Bailey filed a mandamus proceeding against W. B. Haley, as mayor of the City of Albany, M. B. Peacock, as mayor pro tem of said city, and J. W. Bush, P. A. Keenan, C. M. Clark, C. M. Shackleford, and Jim Denson, as members of its board of city commissioners to require the board to revoke a liquor license granted to Frank S. Leggett. Leggett was made a party defendant. The plaintiff alleged "that within 200 yards of said proposed retail liquor store, and within approximately 100 feet from said proposed liquor store at 312 South Monroe Street, Albany, Georgia, is a public-school ground owned and operated by the City of Albany, Georgia, and its city board of education, and as a part of the colored schools located and situated on the south side of the City of Albany, Georgia." Demurrers to the petition, general and special, were overruled; and after hearing evidence, the court granted mandamus absolute. The defendants excepted.

■ The defendant in error moves to dismiss the writ of error on the ground that the case has become moot. The bill of exceptions assigns error on the grant of a mandamus absolute directed against the defendants in the court below, dated March 21, 1945. No supersedeas was granted. In response to a citation for contempt, the city commissioners, on March 31, 1945, passed the following resolution: "Be it resolved by the board of city commissioners of the City of Albany, Georgia, and it is hereby resolved by authority of the same: Section 1. In compliance with and obedient to an order of the superior court of Dougherty County, Georgia, dated March 21, 1945, in the mandamus proceeding of J. M. Bailey vs. W. B. Haley, mayor, et al., the liquor license granted to Frank S. Leggett to operate a retail liquor store at 312 South Monroe Street, Albany, Georgia, is hereby rescinded and revoked. If the Supreme Court of Georgia reverses said order or grants a supersedeas in said case, said license shall be automatically reinstated." The judge of the superior court then signed the following order: "It appearing to the court that after the filing and service of the rule nisi in the contempt proceedings brought by J. M. Bailey, plaintiff, against the defendants in the above-stated case, that the defendants have complied with the thing sought to be compelled, the contempt proceedings in said case are dismissed with cost against the defendants."

It is argued that the case is now moot for the reason that the

thing sought to be compelled, to wit, revoking the liquor license granted to Leggett, has been complied with. The basis for this argument is the judgment of the superior court, in which it is recited that the thing sought to be compelled has been complied with. When we examine the manner in which the compliance was had, we of necessity must look to the resolution of the city commissioners. When this is done, we find that in the event the case is reversed the exact previous status of all parties at interest will be automatically restored, and this without the performance of any act on the part of any person. The question here raised is therefore far from being only academic. The test is whether or not the plaintiff in error, in case of a reversal, could claim or enforce the rights insisted upon. *Hudson* v. *Alford,* 118 *Ga.* 669 (45 S. E. 454) ; *Toole* v. *Davis,* 13 *Ga. App.* 122 (78 S. E. 865). In the instant case not only could the plaintiffs in error secure the rights insisted upon in the event of a reversal, but the exact status of all parties at interest would thereby be automatically restored. This court is of the opinion that the questions involved in the case are not moot, but must be decided.

■ The plaintiffs in error present the following questions to this court: "1. Did the court commit error in overruling the general demurrers: (a) that the petition sets forth no cause of action in favor of the plaintiff against the defendants; (b) that the plaintiff has other specific legal remedies; (c) that the Code, § 58-1029, is unconstitutional? 2. Did the court commit error in overruling the special demurrers? 3. Did the court commit error in refusing to submit the questions of fact, raised by the pleadings and the evidence, to a jury? 4. Did the court commit error in admitting in evidence an uncertified ordinance (in pamphlet form), and in permitting the ordinance to be proved by parol testimony? 5. Did the court commit error in holding as a matter of fact that the premises in question was a school ground, and in granting a mandamus absolute?"

We address ourselves to the main and controlling question in the case. Is the property in question a school ground? The law governing the issuance of licenses to operate liquor stores provides: "No business licensed under this chapter shall be operated within 100 yards of any church, and 200 yards of a school ground or college campus." Code, § 58-1029. It is shown undisputedly that

the City of Albany owns a tract of land, and that prior to 1940 the city operated thereon a school located within less than 200 yards of the proposed liquor store; that the school building was destroyed by a cyclone in 1940, and since that time no school has been operated upon the premises; that the property is now leased by, and in possession of, the United States Government, upon which is operated a U. S. O. Center for colored soldiers; that the U. S. O. Center was constructed by the Federal government, the City of Albany defraying approximately half the cost; that the lease is for the duration of the war and six months thereafter, at which time the building will become the property of the City of Albany; that the City of Albany has had prepared plans for a school building to be located on the property after the lease to the Federal government has expired, and negotiations are now in progress between the City of Albany and the Federal government, the purpose of which is to obtain Federal assistance for this post-war project, but no agreement has been reached. Thus far we have stated undisputed facts. The defendant in error, admitting that there is not now, and has not been since 1940, any school building located on the property, and that the property is now leased by, and in the possession of, the Federal government as a U. S. O. Center, contends nevertheless that the property is a school ground under the purview of the Code section above cited. It is contended, once a school ground always a school ground, or at least until the city expressly or affirmatively determines to abandon the property as a school ground. The further contention is presented that the property is a school ground for the reason that the children of another school (Mercer Street School), not within the prohibited distance, use the grounds in question as a playground. The only testimony offered as to the last contention was by a witness, J. P. Pepper, who, so far as stating any pertinent facts as to this contention, said: "School children play on said grounds every day, and said grounds are used as recreational grounds for said school children of the City of Albany, and especially the colored school children who attend the Mercer Street School on the south side of the City of Albany, Georgia. Deponent says that said school children play on said grounds mornings and afternoons, and that the same is a daily and continuous practice." The principal of the Mercer Street School testified that she had

never designated the premises in question as a playground, and that the children are required to stay on the premises of the Mercer Street School. The supervisor of all colored schools in Albany testified that the premises in question had never been designated as a playground for school children. The superintendent of the public schools of Albany and three members of the board of education of the City of Albany testified that the premises had never been designated as a playground for school children.

We are called upon to say that the property in question is a playground for school children, and thus a school ground, because one person observed the children of another school playing on the vacant lot mornings and afternoons, presumably on the way to and from school. This construction of the evidence would permit many places in a city, even the public streets, to be designated as school grounds, because school children are seen to congregate there and play while on the way to and from school. The writer of this opinion well remembers a location on a small stream where the water was a little deeper than the average, deep in the woods, more than a mile from the country schoolhouse, which, under the construction of the evidence here insisted upon, if applied, would have been a school ground.

It is fundamental that courts when construing the meaning of statutes should take into consideration the evident intent of the legislative branch of government when the law was enacted. What was the objective when the legislature provided that liquor stores should not be located within 200 yards of a school ground? Certainly it was that there should be no traffic in liquor within the specified distance, so that teachers and pupils should not be subjected to the evil influences connected with the liquor traffic. Here we are dealing with premises on which there is no schoolhouse, no teachers and no pupils. Certainly the legislature did not intend to include in the prohibition all premises on which school children might happen to congregate. We think that the evidence in this case shows that the ground in question prior to 1940 was a school ground, and that some time in the future, at least six months after the termination of the war, it may again become a school ground. Now, and at the time the mandamus was obtained, it was and is a U. S. O. Center and not a school ground.

The facts admitted to be true demanded a judgment denying the mandamus absolute. No case in which the facts were identical with the instant case has been called to our attention, and we have found none. The defendant in error cites *Elder* v. *Trustees of Atlanta University*, 194 *Ga.* 716 (22 S. E. 2d, 515, 143 A. L. R. 268), and several cases of like import. There the court was dealing with whether or not properties located in close proximity to a college, and used for college purposes, such as teachers' homes and athletic fields, were exempt from taxation as college property. The fact which differentiates those cases from this one is that·there a college or school actually existed and was in operation. Not so in this case.

Since we have held that the facts demanded a judgment denying mandamus absolute, it becomes unnecessary to rule upon the other questions raised.

*Judgment reversed. Bell, C. J., Jenkins, P. J., Duckworth and Atkinson, JJ., concur.*