S97A0032. CITY OF ARCADE v. EMMONS et al.
(486 SE2d 359)

HUNSTEIN, Justice.

Appellees, residents of the City of Arcade, filed suit on November 5, 1993 to challenge the November 2 at-large election for mayor and five City council seats on the basis that illegal votes had been cast by certain persons who were not residents of the City due to the City's failure to annex the properties where these voters lived in accordance with Georgia law.[1] Appellees amended their complaint a month later to assert that the election violated the Voting Rights Act of 1965 ("VRA"), 42 USC § 1971 et seq., in that the City had knowingly failed to obtain pre-clearance for the annexation of these properties as provided by the VRA. 42 USC § 1973c (hereinafter "§ 5").[2] The record

---

[1] As detailed in appellees' amended complaint, the annexations were alleged to be in violation of OCGA §§ 36-36-20, 36-36-21, and 36-36-59.

[2] 42 USC § 1973c, which is § 5 of the VRA, provides that when certain states, including Georgia, or their political subdivisions enact or seek to administer any voting qualification or prerequisite to voting, or standing, practice, or procedure with respect to voting different from that in force on certain dates, the approval for the change must be obtained either from the District Court for the District of Columbia by means of a declaratory judgment action or from the Attorney General. Section 5 provides that "[a]ny action under this section shall be heard and determined by a [federal court] and any appeal shall lie to the [U. S.] Supreme Court."

reveals that in May 1993, five months before the election, the City had submitted certain recent annexations to the Justice Department for approval and had been notified by the Department in July 1993 that pre-clearance could not be considered until records of the previous annexations were submitted. In an October 1993 letter the Justice Department informed the City that the Attorney General was awaiting the City's response to the July notification and that the annexations were "not legally enforceable insofar as they affect voting" until approved by the Attorney General. The election was nevertheless held with persons from the annexed properties voting therein. Fourteen months later, in January 1995, the City obtained clearance for the annexation of the properties.

In March 1996 the trial court ruled on appellees' petition and found the VRA challenge to be dispositive of the case. The trial court found that the City had failed in proper fashion to prepare and maintain records regarding the annexation of the contested properties and that the City had acted with deliberate defiance of the requirements of the VRA. The trial court found these factors justified vacating the November 1993 election, thus requiring a new election. The City brought this appeal. Based on the facts of this case, we hold the trial court had jurisdiction over the collaterally-raised § 5 claim and authority to enter an order granting appropriate relief for a violation of that section, but that the trial court abused its discretion by ordering the election to be set aside. Accordingly, we reverse the trial court's order.

1. The City asserts in its initial argument that the trial court erred when it concluded it had jurisdiction of the § 5 claim so as to set aside a previously-held election. It is uncontroverted that the state court was not called upon to determine whether the annexations by the City resulted in impairment of the right to vote or were intended to have that effect, nor was the state court asked to grant pre-clearance to the City or rule upon the propriety of any of the Attorney General's actions in regard to the City's petition pursuant to § 5.

In *Hathorn v. Lovorn*, 457 U. S. 255 (102 SC 2421, 72 LE2d 824) (1982), the United States Supreme Court addressed state courts' authority regarding § 5 of the VRA. That court recognized it was "possible" that the federal courts were granted exclusive jurisdiction over " 'action(s) under' § 5 or 'proceedings instituted pursuant' to § 12." *Hathorn v. Lovorn*, supra, 457 U. S. at 267, 268. The court did not resolve that issue,[3] however, because the initial suit was an

---

[3] The U. S. Supreme Court held in *NAACP v. Hampton County Election Comm.*, 470 U. S. 166, 181 (II) (105 SC 1128, 84 LE2d 124) (1985) that it was not within its province to determine whether voting changes in that case resulted in impairment of the right to vote or whether they were intended to have that effect because "[t]hat task is reserved by statute to

action pursuant to Mississippi law and the court found that nothing under §§ 5 or 12 "negates the presumption that, at least when the issue arises collaterally, state courts may decide whether a proposed change in election procedure requires preclearance under § 5." Id. The U. S. Supreme Court rejected the argument that the Attorney General's enforcement of the VRA would be frustrated if state courts possess jurisdiction to decide § 5 issues, holding that "[p]ersons dissatisfied with a state court's *collateral resolution* of a § 5 issue . . . involving other parties" (emphasis supplied) would not be binding upon a non-party such as the Attorney General. *Hathorn v. Lovorn,* supra, 457 U. S. at 268-269, fn. 23. The U. S. Supreme Court found that "[i]f the Mississippi courts had the power to [decide a § 5 issue], then it is clear that they also had the duty to do so." Id. at 269. Accord *Adams County Election Comm. v. Sanders,* 586 S2d 829, 831 (Miss. 1991), the underlying litigation of which was addressed in *Republican Party of Adams County v. Election Comm.,* 775 FSupp. 978 (B) (1) (S.D. Miss. 1991) (holding that any § 5 issues in the state court were collateral to asserted state law issue and thus state court properly claimed jurisdiction over § 5 issues).

Although in *Hathorn v. Lovorn* the plaintiffs had asserted that § 5 rendered certain state actions unenforceable, hence the state court was called upon to "examine the claim and *refrain* from ordering relief that would violate federal law," (emphasis supplied), *Hathorn v. Lovorn,* supra, 457 U. S. at 270 (III), it is implicit in the U. S. Supreme Court's holding that state courts have the authority to examine § 5 claims and resolve those claims by ordering relief consistent with the VRA, at least where, as here, the § 5 issue did not call upon the state court to grant pre-clearance or review the Attorney General's actions in regard to the pre-clearance procedure. See *Hathorn v. Lovorn,* supra, 457 U. S. at 271 (Rehnquist, J., dissenting on basis that Congress "did not intend the state courts to play a role in the enforcement of" the VRA). We do not find persuasive the sole authority cited by the City in support of its position, *Mitchell v. City of Prichard,* 538 S2d 1 (Ala. 1988), given the absence therein of any citation to or analysis of *Hathorn v. Lovorn,* supra, or any other authority for its holding.

2. The City contends that the trial court's ruling is moot in light of subsequent approval of the annexations by the Justice Department. In *Berry v. Doles,* 438 U. S. 190 (98 SC 2692, 57 LE2d 693) (1978), the three-judge district court determined that a staggered-term statute constituted an alteration in voting procedures within the scope of § 5 but found it had not been submitted for approval

the Attorney General or to the District Court for the District of Columbia."

under the procedures set forth in the VRA. The district court exercised its discretion to enjoin further enforcement of the changed procedure but refused to set aside the elections. The U. S. Supreme Court affirmed the ruling in part but reversed and remanded the case to allow the parties 30 days to seek approval under the VRA for the alteration, stating that "[i]f approval is obtained, the matter will be at an end." Id. at 193. In *NAACP v. Hampton County Election Comm.*, 470 U. S. 166 (105 SC 1128, 84 LE2d 124) (1985), the district court erroneously concluded that alterations in voting procedure were outside the scope of § 5 and did not engage in the equitable weighing process necessary to determine whether setting aside the election was an appropriate remedy. The U. S. Supreme Court, in reversing the case and remanding it to allow the parties 30 days to seek approval under the VRA for the alteration, held that should after-the-fact approval be obtained, the district court should then determine whether the election results should stand. In concluding that after-the-fact approval would not automatically render the matter moot, the U. S. Supreme Court distinguished *Berry v. Doles*, supra, on the basis that the district court in *Berry* had correctly recognized the applicability of § 5 and exercised its discretion to reach the question of an appropriate remedy. *NAACP v. Hampton County Election Comm.*, supra, 470 U. S. at 183, fn. 36.

It thus appears that after-the-fact approval of challenged alterations in voting procedures does not automatically render the challenge moot, but that it is necessary to review the basis of the court's ruling and the exercise of its discretion. Id. In the instant case, the trial court correctly recognized that the challenged alterations were within the scope of § 5. Although implicitly acknowledging the Justice Department's after-the-fact approval of the City's annexations, the trial court, citing *NAACP v. Hampton County Election Comm.*, supra, nevertheless determined that the appropriate remedy for the City's violation of the requirements of § 5 was to set aside the November 1993 election. We disagree.

It has been recognized that elections should not be set aside because of a § 5 violation absent serious voting violations or aggravating factors, such as racial discrimination or fraudulent conduct. *Cook v. Luckett*, 735 F2d 912, 922 (5th Cir. 1984).

> Ordering new elections is a drastic remedy for reasons that should be obvious. When elections have been held — even under a voting scheme that does not technically comply with section 5 — the people have chosen their representatives. Neither the Justice Department nor this court should lightly overturn the peoples' choices. Second, as the cost of ordering new elections may be high relative to other public priorities,

a jurisdiction forced into holding a special election has much less to spend on those other necessities. This cost should not be cavalierly brushed away by other branches of government, whether federal or judicial, that neither pay it nor impose the tax burden on which a remedy depends.

*United States v. City of Houston*, 800 FSupp. 504, 506 (I) (S.D. Tex. 1992). Although we share the trial court's strong disapproval of the City's actions in regard to the requirements of the VRA, setting aside an election is a remedy that should be imposed only "when absolutely necessary to vindicate, establish or protect important voting rights. [Cit.]" *United States v. City of Houston*, supra, 800 FSupp. at 505 (I). Thus, we find factually distinguishable the case relied upon by the trial court, *Coalition to Preserve Houston v. Interim Bd. of Trustees*, 494 FSupp. 738 (S.D. Tex. 1980), wherein the court set aside an election which had been held in deliberate defiance of a letter received before the election from the Attorney General, in which approval of the proposed voting changes was refused due to the discriminatory purpose or effect of the changes. Here, the pre-election notification received by the City merely informed the City that no ruling could be rendered on the annexations until further documentation was supplied and it is uncontroverted that approval of the annexations was subsequently obtained.

As noted by the district court in *United States v. City of Houston*, supra,

[i]n endorsing the rule that ordering new elections is a drastic remedy to be reserved for the most egregious cases, we do not foresee that such a rule will undermine compliance with section 5 preclearance procedures. Most public officeholders take just as seriously as does the Justice Department their responsibility to follow the Voting Rights Act.

Id., 800 FSupp. at 506 (I).

Because the facts of this case do not present the sort of egregious situation justifying the setting aside of an election, the trial court erred by entering an order setting aside the November 1993 election.[4] The City having now obtained after-the-fact approval of the challenged annexations, we hold that the matter is thus at an end. *Berry v. Doles*, supra, 438 U. S. at 193.

*Judgment reversed. All the Justices concur.*

---

[4] Because we are reversing the affirmative action ordered by the trial court, we need not address whether pre-clearance of that action was required under the VRA.

DECIDED JUNE 30, 1997 —
RECONSIDERATION DENIED JULY 17, 1997.

Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling, Hunton & Williams, Vernadette R. Broyles, Donna S. Golden, for appellant.
Decker & Hallman, F. Edwin Hallman, Jr., David C. Moss, L. Scott McLarty, Tolbert & Elrod, Scott R. Tolbert, Christopher D. Elrod, for appellees.
Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, Dennis R. Dunn, Senior Assistant Attorney General, Laughlin McDonald, Charles A. Shanor, amici curiae.