302 Ga. 114
FINAL COPY

S17A1004. WILLIAMS v. HEARD et al.

BOGGS, Justice.

In this election contest for a seat on the Baker County Board of Education, we granted the application for interlocutory appeal filed by Brendette Williams, who challenges the trial court's denial of her motion to dismiss the contest petition filed by Sharon Heard, her opponent in the primary election. We conclude that Heard's challenge to the primary election is now moot, and we therefore vacate the trial court's order and remand this case for the contest action to be dismissed. We further conclude that because the trial judge did not meet the requirements of OCGA § 21-2-523 (b) to preside over this action, upon remand, a judge meeting such requirements must be selected to preside over entry of the dismissal.

Heard and Williams were candidates in a primary election on May 24, 2016, for a seat on the Baker County Board of Education. On May 27, the certified returns showed that Williams had defeated Heard by 21 votes, or about 1.90

percent of the total votes cast. Heard requested a recount, and the Board of Elections responded that although a mandatory recount was not required because the margin of victory was more than one percent, it nevertheless decided to recount the race because it was already conducting a mandatory recount in another district.

On June 3, 2016, the recount was conducted with the results of the race being the same as the original returns. For this reason, the returns were not sent a second time to the Secretary of State. The Board of Elections executed a recount certification of returns and placed it in the sealed storage box containing the materials from the May 24 elections. On June 8, 2016, Heard filed a petition to contest the primary election, raising allegations of misconduct, fraud or irregularity by one or more election officials, and the receipt of illegal votes and the rejection of legal votes.[1] Judge O. Wayne Ellerbee, a retired juvenile court judge, was appointed to preside over the matter by an order dated June 15, 2016. On August 31, 2016, the court allowed Williams to intervene in the contest action. Williams moved to dismiss Heard's petition as untimely filed and to recuse Judge Ellerbee because he was not qualified to preside over the action. The

---

[1] Heard amended her petition on June 14, 2016, and June 27, 2016.

court denied both motions in late September and issued a certificate of immediate review. The general election was held on November 8, 2016 with Williams, running unopposed, winning the election.

On November 14, 2016, we granted Williams' interlocutory application. In granting the application, we posed the following questions: (1) Is this case moot because it involves a primary election contest and the general election has taken place? (2) If the case is not moot, did the trial court err when it denied the appellant's motion to dismiss the appellee's petition as untimely? (3) If the case is not moot, did the trial court err when it denied the appellant's motion to recuse?

1. "[T]he established rule in Georgia is that a primary election contest becomes moot after the general election has taken place." (Punctuation omitted.) Dawkins-Haigler v. Anderson, 301 Ga. 27 (799 SE2d 180) (2017), quoting Payne v. Chatman, 267 Ga. 873, 875 (485 SE2d 723) (1997). Citing authority from two other jurisdictions, Heard urges this Court to recognize exceptions to this general rule. Barber v. Moody, 229 So2d 284, 287 (Fla. App. 1969) (where defendants used "every dilatory tactic available to them" under the civil procedure rules, court declined to apply mootness rule); Griffin v. Buzard, 342 P2d 201 (Ariz. 1959) (contest to primary election not brought too late where candidate violated

criminal statutes and defrauded voters by adding to the ballot a "diversionary candidate" with a name similar to his opponent; general election did not operate to make the issues presented moot). However, we decline to recognize the exceptions noted in those cases. As we explained in Payne, supra,

> [we] adhere to the rule that litigants should make every effort to dispose of election disputes with dispatch and that the courts should not interfere with the orderly process of elections after the general election has been held. It is imperative that time remains for appeals and new elections if necessary before a succeeding election renders the issues moot, and before unnecessary expenses are incurred in holding more than one general election. It is also important that decisions concerning election of officials not be delayed so that elected officials can take their stations in a timely manner.

267 Ga. at 877. Although Heard argues that as the *appellee* in this action she was without the remedy provided to an *appellant* under OCGA § 21-2-528, she did not avail herself of any extraordinary or expedited relief in the trial court or this Court. See Eturriaga v. Valdez, 784 P2d 24, 29-30 (N.M. 1989) (mootness doctrine applied where general election had been held and contestants did not avail themselves of expedited procedures or seek extraordinary relief from appellate court). Heard could have requested an expedited hearing on her contest petition in the trial court, moved to stay the general election, or requested expedited consideration of Williams' application for interlocutory appeal. But

4

Heard took no action to ensure that her challenge to the primary election result was considered in a timely manner. As explained in Eturriaga, "it is incumbent upon the contestant of a primary election to utilize every available means to resolve the dispute in time to place his name on the ballot in the general election." Id. at 30.

The questions presented in Heard's election challenge do not present a classic situation of a problem capable of repetition, yet evading review. See Payne, supra, 267 Ga. at 873, 876-877. We therefore conclude that the mootness doctrine applies to the election challenge in this case. See Dawkins-Haigler, supra, 301 Ga. at 28. However, because the appeal here is from the denial of Williams' motion to dismiss Heard's contest petition, rather than dismissing the appeal as moot, see id., we must vacate the judgment and remand this case for the trial court to dismiss the pending contest action as moot.

2. In light of our holding in Division 1, we do not address the parties' arguments related to the second question posed by this Court, involving the trial court's ruling on Williams' motion to dismiss. But because we direct that the pending contest action be dismissed by the court below, we must consider the third question in part - whether Judge Ellerbee qualifies to preside over this matter

5

on remand. We hold that he does not so qualify, and that a different judge, who satisfies the requirements of OCGA § 21-2-523, must be selected to preside.

OCGA § 21-2-523 (b) provides: "The *superior court having jurisdiction* of a contest case governed by this article shall be presided over by a *superior court judge or senior judge*." (Emphasis supplied.)

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Consequently, courts sometimes refer to the rules of English grammar, inasmuch as those rules are the guideposts by which ordinary speakers of the English language commonly structure their words, and the legislature is presumed to know the rules of grammar.

(Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). In applying these principles with reference to the rules of English grammar and in the context of the beginning phrase in OCGA § 21-2-523 (b), that only superior courts have jurisdiction over election contests, the phrase "superior court judge or senior judge" must be read to require that either a superior court judge or a senior superior court judge preside over contest actions, with "superior court" modifying both "judge" and "senior judge."

In 1976 when the "office of Senior Judge of the Superior Courts" was created, "senior judge" was a position held by superior court judges. See Ga. L. 1976, pp. 586, 593; OCGA §§ 47-8-1, 47-8-40, and 47-8-41. Even as early as 1945, a judge of the superior court who desired to resign could accept appointment as a senior judge. See OCGA § 47-8-60. OCGA § 21-2-523, governing jurisdiction and proceedings in election contest cases, was enacted in 1964. See Ga. L. 1964, Ex. Sess., p. 179. This statute was amended in 1991 with the current language: "superior court judge or senior judge." Ga. L. 1991, p. 611, § 2. But OCGA § 15-1-9.3 was not enacted until 1992. See Ga. L. 1992, p. 1116. At that time, the Code section governed the request for the assistance of a senior judge "appointed . . . pursuant to the provisions of Article 8 of Chapter 10 of Title 47," and former OCGA § 47-10-130 (a) provided that a state court or juvenile court judge may be appointed senior judge "of the type of court from which the judge retired." See Ga. L. 1992, p. 1114. In 1998, former OCGA § 47-10-130 was repealed along with other Code sections, and the language, providing for senior judge status for state court judges, probate court judges, and juvenile court judges, is now found in OCGA § 15-1-9.3. See Ga. L. 1998, pp. 513, 535-536. In sum, when the legislature used the phrase "superior court judge or senior judge" in

OCGA § 21-2-523, there was no statutory provision allowing senior judge status for juvenile court judges.

The order appointing Judge Ellerbee to preside over this matter designates him as a senior *juvenile* judge.[2] He was therefore not eligible to preside over this case.[3] For this reason, upon remand, in compliance with OCGA § 21-2-523, a superior court judge or senior superior court judge must be selected to preside over the dismissal of this contest action.

Judgment vacated and case remanded with direction.  All the Justices concur.

---

[2] See OCGA § 15-1-9.3 (a) (1) (retired state court judge or juvenile court judge may be appointed as senior judge "*of the type of court from which the judge retired*" (emphasis supplied)).

[3] See also OCGA § 15-1-9.2 (a) (judge of superior court or former judge of superior court may become senior judge); OCGA § 15-1-9.2 (a.1) ("Notwithstanding the provisions of subsection (a) of this Code section, any Justice of the Supreme Court of Georgia, Judge of the Court of Appeals, superior court judge, state court judge, magistrate court judge, or juvenile court judge who ceases holding office as a judge . . . may become a senior judge" with ten years of service that includes at least five years' service, or five years as total served in combination, as "a Justice of the Supreme Court, Judge of the Court of Appeals, or judge of the superior court.") There is no indication from the record here that Judge Ellerbee has been appointed by the governor as a senior superior court judge pursuant to OCGA § 15-1-9.2 (a.2).

Decided September 13, 2017.

Election contest. Baker Superior Court. Before Judge Ellerbee, Senior Juvenile Court Judge.

McCall Williams, Henry E. Williams, for appellant.

Tyson Heard, Lawton C. Heard, Jr., for Sharon Heard.

Perry & Walters, Franklin T. Coleman III, Franklin T. Coleman IV, Robert K. Raulerson, for Karen Tabb, Trudy Spears, and Tommy Rogers.