NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 13, 2024

S24A0490.  MILLER v. HODGE et al.

MCMILLIAN, Justice.

After a special election for Chatham County Commissioner, elector Jeffry L. Miller filed a pro se petition against several Chatham County election officials (the "County Appellees") and candidate Malinda Jane Scott Hodge to contest various aspects of the election.[1] No candidate received a majority of the vote, so a runoff election was held. Following the runoff election, the trial court ruled both that the results of the special election were valid and that Miller's petition was mooted by the succeeding runoff election. Miller timely appealed to this Court, arguing that the trial court

---

[1] Specifically, Miller argued that Hodge was not a qualified or eligible candidate based on residency requirements and because she was formerly a member of the Chatham County Board of Elections; that the use of a QR code on the ballot was illegal; and that the County Appellees failed to provide notice of redistricting at least 30 days in advance of the special election.

erred in (1) determining that his claims had become moot and (2) finding insufficient evidence to place in doubt the result of the special election. Based on this Court's long-standing precedent setting out prudential reasons for refusing to invalidate an election where the challenger has not acted with dispatch to litigate his election contest claims under OCGA § 21-2-520 et seq. before a subsequent election takes place, we do not reach the merits of Miller's contentions, and we dismiss this appeal.

The record on appeal shows that on September 19, 2023, Chatham County held a special election to fill the vacated seat of District 2 for Chatham County Commissioner. The Chatham County Board of Elections (the "BOE") certified the results on September 25, which resulted in a runoff. On September 29, Miller filed a "Contest Petition Under OCGA 21-2-520 et[] al., OCGA 21-2-521, OCGA 21-2-522 et[] seq., Contesting the Special Election of District 2 County Commissioner" (the "Petition"), in which he alleged that Hodge was ineligible to run and that there were failures by election officials with regard to the form of the ballot, which rendered the

2

election invalid. As relief, Miller requested that Hodge be removed from the special election ballot; that the special election results be stricken and a new special election ordered; and that an injunction issue requiring the BOE officials to follow election laws regarding the form of the ballot.

The trial court conducted an evidentiary hearing on October 16, 2023, but did not issue a ruling. At the hearing, Miller called no witnesses and presented no evidence, relying solely on exhibits attached to his Petition. Miller clarified that he was seeking "to set aside" the special election and that it "be rerun . . . on paper ballots." At no point during the hearing did Miller request an expedited ruling or a stay of the imminent runoff election.[2] Instead, he asked to provide supplemental briefing, and the trial court granted him five days to do so.

---

[2] The parties agree that an initial hearing was held on October 13, 2023, but because he was a resident of Chatham County, the judge recused himself. However, no transcript or recusal order is included in the record. The record does show that on October 16, 2023, the Administrative Judge of the First Judicial Administrative District assigned the case to a new judge who presided over the hearing held on that date.

A runoff election was held on October 17, 2023, and the results were certified on October 23. On November 9, 2023, the trial court entered its order dismissing Miller's Petition, finding that Hodge was eligible to compete in the special election and that the results of the special election were valid. The trial court also found "in favor of Defendants for the separate and independent reason that the Petition and the issues raised therein had been rendered moot by the succeeding run-off election for District 2 Chatham County Commissioner held on October 17, 2023." Miller then timely filed a notice of appeal directed to this Court, citing its exclusive jurisdiction over election contests pursuant to Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (2).[3]

1.      We turn first to the issue of mootness.[4] OCGA § 5-6-48

---

[3] Hodge and the County Appellees have filed separate motions to dismiss this appeal for mootness. VOTERGA filed an amicus brief in this case on the merits but did not address the issue of mootness.

[4] See *Barrow v. Raffensperger*, 308 Ga. 660, 666 (2) (b) (842 SE2d 884) (2020) ("[M]ootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim." (citation and punctuation omitted)); *Byrd v. Goodman*, 192 Ga. 466, 466 (15 SE2d 619) (1941) ("[I]t is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." (citation and punctuation omitted)).

(b) (3) permits the dismissal of an appeal "[w]here the questions presented have become moot." "An appeal becomes moot if the rights insisted upon could not be enforced by a judicial determination." *Randolph County v. Johnson*, 282 Ga. 160, 160 (1) (646 SE2d 261) (2007) (citing *Haley v. Bailey*, 199 Ga. 486 (34 SE2d 685) (1945)).

We have long held that this mootness principle applies in the election context. See, e.g., *Clements v. Wilkerson*, 151 Ga. 467 (107 SE 47) (1921) (where no supersedeas was obtained and the election was duly held, an appeal from the refusal of an injunction to prevent the holding of an election was moot); *Logan v. Johnson*, 247 Ga. 640, 640 (277 SE2d 913) (1981) ("Inasmuch as the general election was held on November 4, 1980, it is too late to conduct a new primary election. Therefore, this appeal must be dismissed as moot."); *Bell v. Raffensperger*, 311 Ga. 616, 619 (858 SE2d 48) (2021) ("To be clear: an appeal is moot when this Court can no longer provide the specific relief requested; election cases are no exception."). Within the specific context of a challenge to a candidate's qualifications, which we understand to be the gravamen of Miller's challenge here, we

have consistently held that such challenges become "moot" once the succeeding election at issue has occurred. See *Bodkin v. Bolia*, 285 Ga. 758, 759-60 (684 SE2d 241) (2009) (a challenge to the inclusion of a candidate's name on the ballot constitutes a pre-election challenge rendered moot by the occurrence of the general election); *Randolph County*, 282 Ga. at 160 (1); *Brooks v. Brown*, 282 Ga. 154, 154 (646 SE2d 265) (2007); *Jordan v. Cook*, 277 Ga. 155, 157 (587 SE2d 52) (2003). And, upon finding that an election challenge has been mooted, we have dismissed the appeal. See, e.g., *Hilliard v. Baldwin*, 289 Ga. 213, 214 (710 SE2d 143) (2011) ("Since an election contest challenging the results of a primary election becomes moot after the general election has taken place and when the plaintiff does not quickly seek statutorily-sanctioned supersedeas and/or an expedited appeal, the appeal is dismissed as moot." (citations and punctuation omitted)); *City of Greenville v. Bray*, 284 Ga. 641, 642 (670 SE2d 98) (2008) (dismissing appeal as moot where the interested party failed to seek a stay of the election prior to the general election taking place); *Brooks*, 282 Ga. at 154-55 (challenge

6

to the date of the election deemed moot by occurrence of the general election); *Palmer v. Conner*, 247 Ga. 35, 36 (273 SE2d 612) (1981) ("Because the general election has already taken place, it is too late to conduct a second primary run-off and this appeal must be dismissed as moot.").

We have repeatedly explained that, to avoid this outcome, "the party challenging either a primary or general election should make every effort to dispose of election disputes with dispatch and that the courts should not interfere with the orderly process of elections after the general election has been held." *Jordan*, 277 Ga. at 156 (citation and punctuation omitted). See also *Williams v. Heard*, 302 Ga. 114, 116 (1) (805 SE2d 1) (2017) (In a challenge to a primary election that was rendered moot by a succeeding general election, "[the challenger] could have requested an expedited hearing on her contest in the trial court [or] moved to stay the general election."); *Parham v. Stewart*, 308 Ga. 170, 172 (1) (839 SE2d 605) (2020) (explaining that, while this Court has "routinely decided [post-] general election challenges on the merits, regardless of whether a

stay or supersedeas was requested or obtained[,] . . . it is important that a party seeking review of any election contest act with dispatch").

In so holding, we have noted that the General Assembly "has demonstrated that election contests are to be heard with the greatest of expedition." *Swain v. Thompson*, 281 Ga. 30, 31 (2) (635 SE2d 779) (2006) (noting, for example, OCGA § 21-2-524 (a)'s requirement that a petition be filed within five days of the consolidation of election returns). See also *Dawkins-Haigler v. Anderson*, 301 Ga. 27, 27-28 (799 SE2d 180) (2017) ("The election statutes that establish procedures for contesting elections are based on an underlying policy that election-related appeals must be timely considered." (citation and punctuation omitted)); *Plyman v. Glynn County*, 276 Ga. 426, 427 (578 SE2d 124) (2003) (explaining that the short time period in which to contest elections "reflects the legislature's strong desire to avoid election uncertainty and the confusion and prejudice which can come in its wake" and that "the swift resolution of election contests is vital for the smooth operation

of government"). Cf. *Payne v. Chatman*, 267 Ga. 873, 875 (485 SE2d 723) (1997) ("Although the Election Code is formulated to provide appellate courts with the authority to entertain applications for stays and supersedeas in primary election challenges for the purpose of protecting the interests of litigants challenging election results, it does not *guarantee* that a primary election contest will be expedited on appeal or offer a remedy where a primary election contest has not been resolved before the general election." (emphasis in original)).

A review of the record in this case demonstrates that Miller failed to utilize every available means to protect his rights and to resolve this election contest prior to the succeeding runoff election, such as by seeking an expedited ruling on the election contest or a stay of the subsequent election.[5] See, e.g., *Williams*, 302 Ga. at 116

---

[5] Although Miller argues on appeal that the first judge assigned to this case "indicated that if the Trial Court were to rule on behalf of [Miller] and if that were to occur after the election and if that was due to the Trial Court's error in failing to properly assign a Judge, then both the Special Election and the Run-off Election would be invalidated," a certified transcript of this hearing was not included in the record, and we cannot rely on Miller's brief in this

(1) (explaining challenger could have requested an expedited hearing in the trial court or moved to stay the general election); *Hilliard*, 289 Ga. at 214 (noting availability of statutorily-sanctioned supersedeas and/or an expedited appeal); *Bray*, 284 Ga. at 642 (noting challenger's failure to seek a stay of the election prior to the general election taking place). Historically, as set forth above, we would have dismissed this appeal as moot. See, e.g., *McCreary v. Martin*, 281 Ga. 668, 670 (642 SE2d 80) (2007) ("The general election has been held. McCreary did not timely exercise his statutory right to seek a stay of that election or to petition this Court for expedition in entertaining his appeal. This Court must conclude that the policy considerations underlying the mootness doctrine apply to this election challenge."); *Jordan*, 277 Ga. at 156 ("Jordan's reliance on the fact that he acted within the statutory ten-day period in filing his appeal in the superior court cannot justify his inaction in seeking

---

regard. See *Arnold v. State*, 286 Ga. 418, 420 (2) (687 SE2d 836) (2010) (documents not included in the official appellate record are not evidence that can be considered by the Court). Moreover, Miller cannot show why any such statement prevented him from moving the trial court to expedite a ruling or to stay or enjoin the imminent runoff election.

to invoke the statutory mechanism to stay the election until after the appeal."). However, we recognize that our framing of this issue as one of mootness is not quite accurate, and we take this opportunity to clarify our holdings in this context.

To say that a claim has become moot typically means that intervening events have rendered the relief sought impossible or pointless. See, e.g., *Scarbrough Group v. Worley*, 290 Ga. 234, 236 (719 SE2d 430) (2011) ("A case is moot when its resolution would amount to the determination of an abstract question not arising upon *existing* facts or rights, and the appellate court is not required to retain a moot case and decide it because a party might possibly derive some future benefit from a favorable adjudication on an abstract question." (citations and punctuation omitted; emphasis in original)); *Chastain v. Baker*, 255 Ga. 432, 433 (339 SE2d 241) (1986) ("This court will upon its own motion dismiss an appeal where it affirmatively appears that a decision would be of no benefit to the complaining party." (citation and punctuation omitted)). Despite our consistent usage of this term in our prior election cases, for claims

11

brought under OCGA § 21-2-520 et seq., the occurrence of a subsequent election does not affect this Court's authority to direct a trial court to declare an election result invalid and to call for a new election, so the occurrence of a subsequent election does not necessarily "moot" issues related to a previous one. See OCGA § 21-2-527 (d) (providing for when a primary, election, or runoff may be invalidated and a new one ordered). And we are unaware of any legal authority that requires us to categorize our dismissal of an election context under such circumstances as being based on "mootness."

Rather, the cases declaring such election contests moot appear to be based on various prudential reasons for courts to limit their exercise of jurisdiction and to refrain from invalidating elections after the fact when the challenging party has not acted with dispatch to litigate their claims before a subsequent election. For example, this Court has carefully explained that "[t]here is a sanctity to elections under our system of self-government, wherein the will of the people . . . is the supreme law." *Randolph County*, 282 Ga. at 160-61 (citation and punctuation omitted). We have also

12

recognized that "[o]rdering new elections is a drastic remedy for reasons that should be obvious. When elections have been held[,] . . . the people have chosen their representatives." *City of Arcade v. Emmons*, 268 Ga. 230, 233 (2) (486 SE2d 359) (1997) (citation omitted). See also *Jordan*, 277 Ga. at 156 ("The justification for this policy is to prevent incurring unnecessary expenses in holding more than one election, to assure the finality of election results, and to settle challenges to a candidate's qualifications prior to the time that voters exercise their constitutional right to vote.").

Although none of these prudential considerations remove or otherwise diminish this Court's authority to order new elections when authorized to do so under OCGA § 21-2-520 et seq., they do inform the circumstances under which this Court may choose to impose such a drastic remedy. These principles continue to counsel the courts in limiting the exercise of jurisdiction under these circumstances, although we make clear that we do not apply those

principles on the basis of "mootness."[6] Instead, we clarify that these considerations are prudential ones, grounded in the statutory framework of OCGA § 21-2-520 et seq., and once again "reaffirm that litigants in election contests have a duty to expedite resolution of the dispute" before an election is held and that the failure to "make every effort to dispose of election disputes with dispatch" before a subsequent election may result in the dismissal of the case. *Jordan*, 277 Ga. at 155-56. Cf. *Swain*, 281 Ga. at 32 ("While Swain's status as a pro se litigant and his initial efforts to correct the deficiencies in service of process evoke sympathy for him, the public policy favoring swift resolution of election contests . . . dictate[s] that we uphold the trial court's determination that . . . this case requires dismissal of Swain's election contest petition.").

Hodge has now been serving as Commissioner for more than

---

[6] We emphasize that we are applying these prudential considerations to Miller's election contest claims under OCGA § 21-2-520 et seq., and that it may be proper under other circumstances for a court to determine that an election challenge is moot after a subsequent election takes place. See, e.g., *Brockington v. Rhodes*, 396 U.S. 41, 43 (90 SCt 206, 24 LE2d 209) (1969) (petition for writ of mandamus to compel election officials to include candidate on the ballot was moot after the election took place).

nine months, and the delay in consideration of this appeal is attributable to Miller's failure to avail himself of the applicable procedures of the Election Code, further exacerbated by Miller's request to submit additional briefing, delaying the trial court's decision. "Certainly, there are instances in which last minute requests for extraordinary relief in election contests are unavoidable. But, this case is not one of them." *McCreary*, 281 Ga. at 670. Under these circumstances, the prudential concerns recognized by this Court, as informed by the relevant statutory framework, when considering similar dilatory election challenges counsel us to dismiss this appeal.

2. In light of our holding in Division 1, we do not reach Miller's remaining enumerations of error.

*Appeal dismissed. All the Justices concur.*