NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 17, 2024

S24A0917. CATOOSA COUNTY REPUBLICAN PARTY et al. v. HENRY et al.

PETERSON, Presiding Justice.

Elections matter. For this reason, parties wanting a court to throw out the results of an election after it has occurred must clear significant hurdles. And for decades, our precedent has made crystal clear that the first such hurdle is for the parties seeking to undo an election to have done everything within their power to have their claims decided before the election occurred. But in this case, the parties wanting us to throw out election results ignored this long-standing rule, did nothing to expedite this appeal, and instead requested delays. Accordingly, we dismiss the appeal without reaching the merits (or lack thereof) of their claims.

The appellants, who are the Catoosa County Republican Party

("CCRP") and its executive officers (collectively, "the CCRP Defendants"), tried to stop certain candidates from qualifying for the May 2024 Republican primary for certain county commission seats, citing a statute that provides in part that "[u]nless otherwise provided by law, all candidates for party nomination in a state or county primary shall qualify as such candidates in accordance with the procedural rules of their party[.]" OCGA § 21-2-153 (b). A document introduced as an exhibit before the trial court, purporting to be the local rules of the CCRP, provides that "[i]n order to qualify for office as a Republican, a potential candidate must be approved by the [CCRP] County Committee by a majority vote within twelve (12) months prior to the date he or she attempts to qualify." And the document also provides that "[i]n order to qualify for office as a Republican in Catoosa County, a potential candidate must present, at the time of qualifying, a signed and notarized affidavit from the [CCRP] Chairman or Secretary, stating the date and location of the meeting that the [CCRP] County Committee voted to allow the proposed candidate to qualify for office as a Republican."

On March 4, 2024, Steven M. Henry, Larry C. Black, Jeffrey K. Long, and Vanita C. Hullander ("the Candidates") each filed a separate petition against the CCRP Defendants. The Candidates alleged that although they met the statutory requirements to qualify as candidates for the Republican primary for various positions on the Catoosa County Board of Commissioners, earlier that day the CCRP's agent had "denied" the Candidates "the right to qualify." The petitions sought temporary restraining orders and interlocutory and permanent injunctions prohibiting the CCRP Defendants from preventing their qualification as candidates. The qualifications period began on March 4, 2024, and was set to end at noon on March 8, 2024. See OCGA § 21-2-150 (setting primary election for May 21, 2024, the Tuesday of the twenty-fourth week prior to the November general election in an even-numbered year); OCGA § 21-2-153 (c) (1) (A) (setting qualification for the eleventh week immediately prior to state or county primary).

On March 5, the trial court issued temporary restraining orders ("the TROs") "enjoining and restraining" the CCRP

3

Defendants "from prohibiting the qualification of" the Candidates as Republican candidates for the May 21 primary. On March 6, the CCRP Defendants filed motions to lift the TROs and dismiss the petitions, arguing, among other things, that the TROs and the petitions were attempting to force the CCRP Defendants to engage in particular speech and associate with "inauthentic Republicans" in violation of the First Amendment. On March 7, following a hearing, the trial court ordered the cases to be consolidated and denied the motions to lift the restraining orders and dismiss the cases. This order concluded that the CCRP's rule requiring a "Qualifying Affidavit" from the CCRP could not be enforced because (1) it was not a "procedural rule"; (2) the CCRP's rules were void because there was no attestation that the rules submitted by the Candidates as an exhibit were "the adopted rules" and they did not bear "any other certification that would be required by OCGA § 21-2-111 (c)"; and (3) the state Republican Party executive committee rules have no provision regarding pre-approval of candidates for other offices, such that the rule was not "consistent with law and the rules and

4

regulations of the state executive committee[.]" OCGA § 21-2-111 (c). The trial court ordered that county sheriff's deputies should escort the Candidates to the CCRP's "qualifying location" and "enforce" the previous day's order and that "a $1,000 fine shall be hereby enforced per Respondent per Petitioner **for each hour** that Respondents prohibit the qualification of Petitioners." (Emphasis in original.)

The CCRP Defendants unsuccessfully sought to appeal, the Candidates sought contempt, and the trial court in a March 8 order stated that the fines threatened in the March 7 order "would continue to accrue" until the noon qualifying deadline but the court would set another date for a hearing on the motion for contempt. In an attempt to fashion a remedy for the Candidates, the trial court "order[ed] that each of the Petitioners is entitled to qualify with the Catoosa County election superintendent at their offices pursuant to OCGA § 21-2-153 (c) (2) as if the county political party had not provided sufficient notice and as if the three-day notice had been

5

provided."[1] At 2:03 p.m. on that same day, the CCRP Defendants filed a notice of appeal to the Court of Appeals. The case docketed at the Court of Appeals on March 28, 2024. On April 12, 2024, the Court of Appeals transferred the case to this Court as within our jurisdiction over "[a]ll cases of election contest." Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (2).

We agree with the Court of Appeals that this Court, rather than the Court of Appeals, has subject matter jurisdiction over the CCRP Defendants' appeal. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (2). But we nonetheless dismiss the appeal.

In their appeal, the CCRP Defendants ask this Court to reverse the trial court's ruling below — which declared that each of the Candidates was "entitled to qualify with the Catoosa County election superintendent" under OCGA § 21-2-153 (c) (2) — and

---

[1] OCGA § 21-2-153 (c) (2) provides: "If a political party has not designated at least 14 days immediately prior to the beginning of qualifying a party official in a county with whom the candidates of such party for county elective offices shall qualify, the election superintendent of the county shall qualify candidates on behalf of such party. The election superintendent shall give notice in the legal organ of the county at least three days before the beginning of qualifying giving the dates, times, and location for qualifying candidates on behalf of such political party."

6

dismiss the Candidates' petitions. Thus, it appears that the CCRP Defendants essentially seek a ruling that honors the CCRP Defendants' decision to block the Candidates' qualification.[2] Although the record provides little indication of what happened after the trial court on March 8 ordered that the Candidates be permitted to qualify, the CCRP Defendants' requested relief would appear to require upending the results of a completed primary election as to one or more commission seats. See OCGA § 21-2-150; OCGA § 21-2-501 (a) (1) (setting primary runoff for June 18, 2024, the twenty-eighth day after the holding of the preceding primary).[3]

---

[2] As set forth in the March 7 and March 8 orders, the trial court stated that certain "fines" would accrue in the event of noncompliance. But in their briefing before this Court, the CCRP Defendants make no argument specific to the fines. Moreover, the record does not contain any particular order holding any litigant in contempt or actually imposing a specific "fine." And the record shows that the trial court indicated that it would take up the Candidates' motion for contempt at a later hearing, which does not appear to have yet occurred. Accordingly, there appears to be nothing ripe for our review in the trial court's threat of a particular future punishment for noncompliance with its orders. Nor does our dismissal of this appeal preclude the CCRP Defendants from pursuing through applicable procedures an appeal from any order on such an issue if the trial court chooses to enter one on remand.

[3] As noted above, the notice of appeal was filed after the close of qualifying at noon on March 8. The Candidates' brief to this Court, filed before the primary runoff, represents that each of the Candidates "qualified with the Board of Elections by noon on March, 8, 2024[,]" and that each "was either successfully nominated or advanced to a runoff election" in the primary.

7

Given the CCRP Defendants' failure to litigate this appeal with dispatch, our long-standing precedent directs us to decline to consider their arguments.

"[W]e have consistently held that" we will not review challenges to a candidate's qualifications "once the succeeding election at issue has occurred." See *Miller v. Hodge*, 2024 WL 3801827, *2 (1) (Case No. S24A0490, decided August 13, 2024). We repeatedly have dismissed appeals in the context of pre-election challenges to candidates' qualifications where the election at issue already has taken place by the time that the appeal is disposed of, particularly where the appellant does not exhaust avenues to have the appeal disposed of prior to the election. See, e.g., id. at *2-*5 (1) (dismissing appeal of decision dismissing petition challenging candidate's eligibility for special election and raising issues with regard to ballot form, where challenger did not seek expedition of consideration of petition or stay of runoff and instead sought time to file supplemental briefing after the runoff had occurred) (citing cases). Our practice in this regard appears to be "based on various

8

prudential reasons for courts to limit their exercise of jurisdiction and to refrain from invalidating elections after the fact when the challenging party has not acted with dispatch to litigate their claims before a subsequent election[,]" in particular, preventing the unnecessary expense of holding more than one election, assuring the finality of results, and respecting the "sanctity" of elections "wherein the will of the people . . . is the supreme law." Id. at *4 (1). Moreover, in holding that challengers must make every effort to dispose of election disputes with dispatch in order to avoid dismissal, "we have noted that the General Assembly 'has demonstrated that election contests are to be heard with the greatest of expedition.'" Id. at *3 (1) (quoting *Swain v. Thompson*, 281 Ga. 30, 31 (2) (635 SE2d 779) (2006), which noted, for example, OCGA § 21-2-524 (a)'s requirement that a petition contesting the results of a primary or election must be filed within five days of the consolidation of election returns).

Particularly relevant here, the statutory provisions authorizing electors' challenges to candidate qualifications contain

short deadlines, including a two-week deadline after the end of qualifying for filing a complaint with the superintendent and a ten-day deadline for appealing to a superior court a superintendent's decision on such a challenge. See OCGA § 21-2-6 (b), (e). This action is not an election contest under OCGA § 21-2-520 et seq. or a challenge to candidate qualifications brought under OCGA § 21-2-5 or OCGA § 21-2-6. Rather, although the CCRP Defendants are challenging the eligibility of the Candidates for office, this unusual action was brought by the Candidates themselves. Nevertheless, the same prudential reasons counseling dismissal in more traditional challenges to candidate qualifications or election results apply here, where the CCRP Defendants assert their challenge to the Candidates' qualifications in a defensive posture.

We previously have applied our rule requiring a challenger to act with dispatch in the context of a qualifications challenge where the challenger failed to exhaust opportunities to resolve the dispute prior to a primary. See *Jordan v. Cook*, 277 Ga. 155, 157 (587 SE2d 52) (2003) (affirming superior court's dismissal of challenge to

candidate's qualifications on the ground of delay where challenger did not appeal the elections superintendent's decision until after the primary election — which also "served as the general election" for the seat at issue — or seek a stay by the reviewing court). Indeed, the sort of policy considerations behind our prudential rule, identified above, apply even more strongly in the context of an impending primary election. See *Parham v. Stewart*, 308 Ga. 170, 172 (1) (839 SE2d 605) (2020) (policy considerations counseling parties and trial courts to act with dispatch to resolve election contests "have even greater weight in primary election challenges).

Although the trial court worked quickly to resolve the parties' dispute prior to the qualifying deadline, and the CCRP Defendants quickly filed a notice of appeal, any sense of urgency apparently ended at that point. The CCRP Defendants appealed to the wrong court — with a notice of appeal that jumbled the questions of subject matter jurisdiction and procedural jurisdiction — and filed nothing in that court after the case was docketed there. Once the appeal was transferred to this Court on April 12, at which point the election was

11

less than six weeks away — possibly enough time to consider the merits of the CCRP Defendants' appeal, but only if the timetable for deciding the case were expedited — the CCRP Defendants did not seek expedited review or emergency relief. See Supreme Court Rule 9 ("The Court may issue an order of supersedeas or other similar orders whenever deemed necessary."); Supreme Court Rule 26 (3) (providing for emergency motions, which must contain "an explanation as to why an order of this Court is necessary and why the action requested in time-sensitive"); Supreme Court Rule 26 (4) (providing for motions to expedite in "extraordinary circumstances such as when the appeal would become moot absent an expedited decision"); see also *Bell v. Raffensperger*, 311 Ga. 616, 618 n.3 (858 SE2d 48) (2021) (noting that "an appellant seeking to rely on the expedited-review provision in OCGA § 21-2-172 (c) should alert the Court that the appeal involves a decision on a nomination petition by filing a motion for expedited appeal citing that provision"); *Whitmer v. Thurman*, 241 Ga. 569, 569 (247 SE2d 104) (1978) (noting that this Court had granted prospective candidate's motion

to expedite his appeal of lower court's decision that he was not eligible for office "due to the necessity of a decision prior to the primary election").

Instead of asking this Court to move quickly, the CCRP Defendants did the opposite. On April 30, 2024, notwithstanding that the transfer of the case had afforded them additional time to prepare a brief, the CCRP Defendants filed in this Court a request for extension of time to file their principal brief, which had been due on May 6, 2024. That request was granted, and the CCRP Defendants filed their brief on the last day of the newly extended period. They then agreed to have the case orally argued; the Candidates filed a request for oral argument, representing that the CCRP Defendants also "desire[d] to argue orally." The oral argument request did not seek expedited scheduling of oral argument; indeed, it said counsel for the Candidates preferred "to wait until after the run-off election to confirm who shall make said oral argument." The CCRP Defendants did not raise any objection

to such a time frame or otherwise seek to expedite oral argument.[4]

By the time briefing in the case was completed with the filing of the CCRP Defendants' reply brief on June 20, the primary election, including a runoff, already had occurred.

Our precedent required the CCRP Defendants to do all they could to ensure that their claims were resolved before the primary election occurred. But they chose delay instead. "Under these circumstances, the prudential concerns recognized by this Court, as informed by the relevant statutory framework, when considering similar dilatory election challenges counsel us to dismiss this appeal." *Miller*, at *5 (1).

*Appeal dismissed. All the Justices concur.*

---

[4] We denied the request for oral argument.

BETHEL, Justice, concurring.

I join the Court's opinion in full. I write separately to highlight an important issue raised by but not reached in the case at hand that, I expect, this Court sooner or later will be called on to resolve, namely, whether under OCGA § 21-2-153 (b) county-level party organizations, like the Catoosa County Republican Party (CCRP), are empowered to promulgate procedural rules[5] for the qualification of candidates in primary elections.

Under Georgia law, "all candidates for party nomination in a state or county primary shall qualify as such candidates in accordance with the procedural rules *of their party*[.]" OCGA § 21-2-153 (b) (emphasis supplied). The trial court here found that the Candidates had complied with the mandates of OCGA § 21-2-153, which establishes requirements and procedures for qualifying as a candidate for a party nomination in a state or county primary, and, thus, were entitled to qualify as candidates for the Republican

---

[5] I express no opinion regarding the question of whether the CCRP rules at issue in this case are procedural.

15

primary in Catoosa County. But on appeal, the CCRP Defendants argue that this finding was erroneous because the Candidates failed to obtain a "qualifying affidavit." The affidavit requirement invoked by the CCRP Defendants stems from a rule promulgated not by the state Republican party but by the CCRP. Thus, implicit in the CCRP Defendants' argument is the notion that "party," as the term is used in OCGA § 21-2-153 (b), encompasses not only state-level party organizations but county-level party organizations as well.

It seems likely to me that "party" is inclusive of party organizations that have secured ballot access privileges under Georgia law, such as the Georgia Republican Party (GRP) and the Democratic Party of Georgia (DPG). It is not at all clear to me, however—and the CCRP Defendants have not meaningfully grappled with the issue—that the "party" referenced in OCGA § 21-2-153 (b) extends beyond such entities to county-level party organizations like the CCRP.[6] Of course, I cannot and do not express

---

[6] Indeed, the trial court seems to have had similar questions about the authority of the CCRP when, citing OCGA § 21-2-111(c), it noted in its March

16

any opinion about the proper reach of "party," as that term is used in OCGA § 21-2-153 (b), as it is unnecessary to the resolution of this case. Rather, I flag the question for more serious consideration if and when the theory espoused by the CCRP Defendants returns to this Court. And in the event such a case comes before this Court, I hope that the Solicitor General, the DPG, the GRP, and any other interested parties will weigh in as amicus curiae on this important issue.

---

7, 2024, order that the CCRP "rules are not 'consistent with the law and the rules and regulations of the state executive committee' of the Georgia Republican Party because the state executive committee rules have no provision regarding preapproval of candidates for other offices."