NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



## SUPREME COURT OF GEORGIA

September 25, 2024

S25A0177. HASAN AL-BARI et al. v. CRAIG PIGG et al.

S25A0178. CORNEL WEST v. ROBERT WITTENSTEIN et al.

S25A0179. RANDOLPH CLAPP et al. v. CRAIG PIGG et al.

S25A0180. BRADFORD J. RAFFENSPERGER v. CRAIG PIGG et al.

S25A0181. GEORGIA REPUBLICAN PARTY, INC. v. CRAIG PIGG et al.

S25A0182. BRADFORD J. RAFFENSPERGER v. CRAIG PIGG et al.

S25A0183. GEORGIA REPUBLICAN PARTY, INC. v. CRAIG PIGG et al.

S25X0184. CRAIG PIGG et al. v. BRADFORD J. RAFFENSPERGER, et al.

Upon consideration, the deadline for motions for reconsideration in these matters has been expedited. It is ordered that a motion for reconsideration, if any, must be filed **no later than close of business (4:30 p.m.) on Thursday, September 26, 2024**. This deadline applies notwithstanding any other orders from this court extending filing deadlines in other cases.

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

In the Supreme Court of Georgia

Decided: September 25, 2024

S25A0177.  AL-BARI et al. v. PIGG et al.
S25A0178. WEST v. WITTENSTEIN et al.
S25A0179. CLAPP et al. v. PIGG et al.
S25A0180. RAFFENSPERGER v. PIGG et al.
S25A0181. GEORGIA REPUBLICAN PARTY, INC. v. PIGG et al.
S25A0182. RAFFENSPERGER v. PIGG et al.
S25A0183. GEORGIA REPUBLICAN PARTY, INC. v. PIGG et al.
S25X0184. PIGG et al. v. RAFFENSPERGER et al.

WARREN, Justice.

When Georgians go to the polls to vote for candidates for President and Vice President of the United States, they do not vote for those candidates directly. Although those candidates are listed on the ballot, a vote cast for a presidential candidate is in fact a vote for a slate of presidential electors.  See OCGA § 21-2-285 (e).  The winning slate of electors will in turn cast their votes for the President and Vice President in the Electoral College. See OCGA §§ 21-2-10, 21-2-11, 21-2-285 (e); U.S. Const., Art. I, Sec. I, Cl. 3.

1

Under Georgia law, the electors for independent presidential and vice-presidential candidates must themselves qualify for election to the office of presidential elector if they wish to have their candidates for President and Vice President placed on Georgia's ballot. See OCGA §§ 21-2-132.1 (b); 21-2-132.

In separate cases below, Georgia voters challenged the qualifications of the presidential electors certified by Dr. Cornel West and Claudia De la Cruz, two independent candidates running for President of the United States. The challengers asserted that those candidates for presidential elector were required to file in their own names a nomination petition signed by a number of qualified Georgia voters to have their independent candidates for President placed on the ballot—and because not even one of those electors filed such a petition, their independent candidates for President should not be listed on the ballot for the November 5, 2024, General Election. Initial Decisions in these challenges were rendered by the Chief Administrative Law Judge, who agreed with the challengers and concluded that neither West's electors nor De la Cruz's electors

2

had met the qualification requirements to be candidates for presidential elector under Georgia's Election Code. The Secretary of State then overruled each of the Chief ALJ's Initial Decisions and concluded that both West's electors and De la Cruz's electors had qualified under Georgia law for the office of presidential elector. But two different superior court judges reviewing the West and De la Cruz challenges, respectively, reversed the Secretary's Final Decisions, concluding that because no West or De la Cruz elector had filed a nomination petition in his or her own name, no West or De la Cruz elector had qualified to place their candidate on the ballot. West, West's electors, De la Cruz's electors, the Georgia Secretary of State, and the Georgia Republican Party applied for discretionary review in this Court and sought expedited consideration.

Whether our Election Code requires presidential electors for an independent candidate for President of the United States to file nomination petitions in their own names is an unsettled and important question, so we granted review. We did so because the November 2024 election is fast approaching, and Georgia's election

3

officials and voters need to know whether these two independent candidates are properly listed on the ballot. If not, then election officials need to know that so they can take steps to inform voters that votes cast for those candidates will not count. Accordingly, we ordered briefing and heard oral argument on an accelerated schedule.

For the reasons set out in this opinion, we now hold that each presidential elector for an independent candidate running for the office of President of the United States is a "candidate" required to file a notice of candidacy under OCGA § 21-2-132 (d) (1); OCGA § 21-2-132 (e) applies to each presidential elector for an independent candidate running for the office of President of the United States; and, under OCGA § 21-2-132 (e), each presidential elector is therefore required to file a nomination petition in his or her own name "in the form prescribed in Code Section 21-2-170." We further hold that if no presidential elector for an independent candidate for President files such a petition for a particular election, no elector has qualified as a candidate for the office of presidential elector, and

4

so that elector's independent candidate for President may not appear on the ballot for election in Georgia.

The parties to this appeal agree that no West elector and no De la Cruz elector filed a nomination petition in his or her own name. We therefore affirm the decisions of the superior courts below, which correctly concluded that neither West's nor De la Cruz's electors satisfied the statutory requirements for their respective independent candidates to appear on Georgia's ballot for the office of President of the United States.[1]  As a result, the remedies the superior courts ordered are affirmed.  We note that at oral argument, counsel for the Secretary represented to this Court that if the superior courts' orders in these cases were to be affirmed, the Secretary would comply with OCGA § 21-2-5 (c), which involves "plac[ing] prominent notice[s]" at "each affected polling place advising voters of the disqualification of the candidate[s] and all

---

[1] We also affirm the superior court's order in *Wittenstein, et al. v. West*, No. 24CV011079 (Sept. 11, 2024), which dismissed as moot a challenge to West's qualifications in his capacity as a candidate for the office of President of the United States.  See below, n.2.

votes cast for such candidate[s] shall be void and not counted," and that he would include notices in absentee ballot envelopes uniformly as to both West and De la Cruz.

## I. *Background and Procedural History*

### (a) *Proceedings Below*

Independent candidates West and De la Cruz purported to meet the statutory requirements to appear on the Georgia ballot in late June 2024, and the Secretary of State concluded that they were qualified to appear on the Georgia ballot for the November 5, 2024, General Election.

On July 12, 2024, a group of Georgia voters (the "Pigg challengers") filed separate complaints[2] against the Secretary's

---

[2] In a third case below, a different set of Georgia voters (the "Wittenstein challengers") challenged the qualifications of candidate West to appear on the Georgia ballot. The merits of that case are not before this Court on appeal, but candidate West filed, and we granted, a discretionary application pertaining to the action challenging West's qualification. See Case No. S25A0178. West contends that the superior court erroneously dismissed his appeal below after concluding that it did not need to reach the merits of the challengers' appeal as to West, given its conclusion that the West electors did not qualify under the Georgia Election Code. See *Wittenstein, et al. v. West*, No. 24CV011079, Order at 3 (Sept. 11, 2024). No such challenge was brought against candidate De la Cruz.

6

qualification of the West electors and the De la Cruz electors pursuant to OCGA § 21-2-5 (b).[3] On August 19 and August 22, 2024, the Chief ALJ held separate hearings on the challenges against the West electors (Al-Bari et al.) and the De la Cruz electors (Clapp et al.), respectively. On August 26, 2024, the Chief ALJ issued separate Initial Decisions concluding that "to qualify as a candidate for the office of presidential elector, each candidate for that office . . . is required to timely file 'a nomination petition in the form prescribed in Code Section 21-2-170.'" Because none of West's electors and none of De la Cruz's electors had met this requirement,

---

[3] OCGA § 21-2-5 (b) provides in relevant part:
Within two weeks after the deadline for qualifying, any elector who is eligible to vote for a candidate may challenge the qualifications of the candidate by filing a written complaint with the Secretary of State giving the reasons why the elector believes the candidate is not qualified to seek and hold the public office for which he or she is offering. Upon his or her own motion or upon a challenge being filed, the Secretary of State shall notify the candidate in writing that his or her qualifications are being challenged and the reasons therefor and shall advise the candidate that he or she is requesting a hearing on the matter before an administrative law judge of the Office of State Administrative Hearings pursuant to Article 2 of Chapter 13 of Title 50 and shall inform the candidate of the date, time, and place of the hearing when such information becomes available. The administrative law judge shall report his or her findings to the Secretary of State.

none were "qualified as candidates for the office of presidential elector."

As relevant here, the West electors and the De la Cruz electors appealed to the Secretary of State, who on August 29, 2024, issued separate Final Decisions reversing the Chief ALJ's determination that neither the West nor the De la Cruz electors were qualified. Citing an injunction imposed by a federal district court in *Green Party of Georgia v. Kemp*, 171 FSupp.3d 1340 (N.D. Ga. 2016),[4] the Secretary concluded that the nomination petitions West and De la Cruz submitted in their own names, which each contained at least 7,500 valid signatures, were sufficient to qualify the West and De la Cruz electors to be candidates for the office of presidential elector. The Secretary reasoned that, notwithstanding the Chief ALJ's conclusion that OCGA § 21-2-132 (e) requires presidential electors

---

[4] The *Green Party* injunction stated: the Secretary of State "is PERMANENTLY ENJOINED from enforcing the one percent signature requirement in O.C.G.A. § 21-2-170 against presidential candidates. Until the Georgia General Assembly enacts a permanent measure, a candidate for President may access the ballot by submitting 7,500 signatures on a petition that otherwise complies with Georgia law." *Green Party*, 171 FSupp.3d at 1374. We address the *Green Party* injunction below in Division IV.

8

to submit nomination petitions in their own names, he could not require the West or De la Cruz electors to also submit nomination petitions in their own names to place West and De la Cruz on the ballot because, under the *Green Party* injunction as interpreted by the Secretary, "the Secretary is prohibited from requiring independent candidates for President to submit more than 7,500 signatures on a single petition to access the General Election ballot." The Pigg challengers appealed both decisions to the Fulton County Superior Court.

On September 11, 2024, two different judges of the Fulton County Superior Court reversed the Secretary of State.[5] Each judge determined that (1) OCGA § 21-2-132 requires a candidate for the

---

[5] The Georgia Republican Party sought, and was granted, intervention pursuant to OCGA § 9-11-24 in *Pigg, et al. v. Raffensperger, et al.*, No. 24CV011040 (Sept. 11, 2024) (the De la Cruz elector challenge); it joined the case on the side of the De la Cruz electors. It also sought intervention in *Pigg, et al. v. Raffensperger, et al.*, No. 24CV011035 (Sept. 11, 2024) (the West elector challenge), on the side of the West electors, but did not obtain a ruling on that motion. In the De la Cruz elector challenge, the Georgia Republican Party also filed a motion to dismiss for failure to join Claudia De la Cruz as an indispensable party, which De la Cruz joined; the superior court denied it, finding that "Ms. De la Cruz's interests are adequately protected by her candidates for presidential electors, who are Respondents herein."

9

office of presidential elector to file a nomination petition in the form prescribed by OCGA § 21-2-170; (2) the injunction imposed by a federal district court in *Green Party* applies only to the signature requirement in OCGA § 21-2-170 (b) and does not prevent the Secretary of State from requiring presidential electors to file nomination petitions; and (3) neither West's nor De la Cruz's electors had properly qualified to place their presidential candidate on the ballot.

In considering what remedy to order in light of these legal conclusions, the superior court in *Pigg, et al. v. Raffensperger, et al.*, No. 24CV011035 (Sept. 11, 2024) (the West elector challenge) expressly found under OCGA § 21-2-5 (c) that there was "insufficient time to strike" West's name "or reprint the ballots." See Order at 11 . Citing OCGA § 21-2-5 (c), the court ordered the Secretary to "post notices . . . at every polling location to alert all Georgia Voters that Dr. Cornel West is not a valid candidate for the Office of President of the United States." Id.

In *Pigg, et al. v. Raffensperger, et al.*, No. 24CV011040 (Sept.

11, 2024) (the De la Cruz elector challenge), a different superior court directed the Secretary to "withhold the name of Claudia De la Cruz from the ballot or strike Ms. De la Cruz's name from the ballot if the ballots have been printed." See Order at 11. That superior court declined to make an express finding about time under OCGA § 21-2-5 (c) but ordered in the alternative that, if there was insufficient time to strike De la Cruz's name or reprint ballots, the Secretary "shall ensure that a prominent notice is placed at each affected polling place advising voters of the disqualification of Ms. De la Cruz." Id. To the extent De la Cruz's name had "already been included on any printed ballots and those ballots [could] be reprinted and still meet applicable deadlines for mailing ballots," the superior court further directed the Secretary to "take all steps to ensure" ballots would be reprinted. Id. at 12. And to the extent De la Cruz's name had "already been included on any printed ballot and those ballots [could not] be reprinted," the superior court directed the Secretary to "ensure that a prominent printed notice advising voters" that De la Cruz was disqualified would be included with

11

these printed ballots.  Id.

(b) *Proceedings in this Court*

Following the orders from the superior courts, the West electors, the De la Cruz electors, the Secretary of State, and the Georgia Republican Party filed in this Court discretionary applications, motions for emergency stay, and requests for expedited consideration.  The first of these applications was filed the day after the superior courts issued their decisions, and the last was filed two days later.  West, in his capacity as a candidate, also filed a discretionary application, motion for emergency stay, and request for expedited consideration.

We granted each of the applications in an expedited manner on September 17, 2024, directing the parties to file their notices of appeal by September 18, 2024, and their principal briefs by September 20, 2024.  The Pigg challengers filed their notice of cross-appeal on September 19, 2024.  We heard oral argument on

September 24, 2024.[6]

## II.  *Standard of Review*

Qualification challenges under OCGA § 21-2-5 come to us on appeal from a superior court's appellate review of an agency decision.  See OCGA § 21-2-5 (e) (allowing a petition for review of the Secretary of State's decision to the Fulton County Superior Court and appeal of that decision to this Court or the Court of Appeals, as provided by law).  In such cases, we generally "accept

---

[6] We recently have dismissed other election contests on prudential grounds because of the parties' failure to pursue their claims expeditiously. See, e.g., *Catoosa County Republican Party v. Henry*, --- Ga. ---, --- (--- SE2d ---) (2024) (explaining that our precedent requires parties challenging a candidate's qualifications for office "to do all they [can] to ensure that their claims [are] resolved" before an election occurs); *Jordan v. Cook*, 277 Ga. 155, 156 (587 SE2d 52) (2003) ("[T]he party challenging either a primary or general election should make every effort to dispose of election disputes with dispatch[.]") (citation and punctuation omitted).

We emphasize that the parties in this election contest have moved with alacrity and dispatch—especially once the cases reached this Court.  As detailed above, the initial complaints filed timely with the Secretary of State were lodged just over two months ago, on July 12, 2024, and three levels of review (ALJ, Secretary of State, and superior courts) spanned less than a month, from mid-August to mid-September.  The superior courts below issued orders on September 11, 2024, and some of the affected parties began filing discretionary applications the very next day.  When they did, they moved for emergency stays and asked for expedited consideration. We ordered an accelerated schedule and the parties briefed and argued the appeals within one week of the first discretionary appeal being granted.

13

the agency's findings of fact if there is any evidence to support the findings" and "examine [de novo] the soundness of the conclusions of law drawn from the findings of fact supported by any evidence." See *Handel v. Powell*, 284 Ga. 550, 552 (670 SE2d 62) (2008) (noting that OCGA § 21-2-5 (e) mirrors the Administrative Procedure Act with respect to superior court review of agency decision and applying the same standard of review). We note that "the agency's interpretation [of statutes] is not binding on the courts, which have the ultimate authority to construe statutes." Id. at 553.

## III. *Statutory Construction*

As detailed above, the primary legal question presented by the election challenges before us on appeal is whether the presidential electors for two independent candidates for President of the United States have met the statutory requirements for qualification under Georgia's Election Code, such that those electors' candidates for President may be placed on Georgia's ballot in the November 2024 election. In particular, the challengers contend that each presidential elector for an independent candidate for President is

14

required to file a nomination petition signed by a certain number of registered voters.

To address this argument, we turn to the relevant provisions of our Election Code. Code Section 21-2-132 (e) says in relevant part:

> *Each candidate required to file a notice of candidacy by this Code section shall,* no earlier than 9:00 A.M. on the fourth Monday in June immediately prior to the election and no later than 12:00 Noon on the second Tuesday in July immediately prior to the election, *file with the same official with whom he or she filed his or her notice of candidacy a nomination petition in the form prescribed in Code Section 21-2-170 . . . .*[7]

---

[7] The complete text of OCGA § 21-2-132 (e) is as follows:

Each candidate required to file a notice of candidacy by this Code section shall, no earlier than 9:00 A.M. on the fourth Monday in June immediately prior to the election and no later than 12:00 Noon on the second Tuesday in July immediately prior to the election, file with the same official with whom he or she filed his or her notice of candidacy a nomination petition in the form prescribed in Code Section 21-2-170, except that such petition shall not be required if such candidate is:

(1) A nominee of a political party for the office of presidential elector when such party has held a national convention and therein nominated candidates for President and Vice President of the United States;

(2) Seeking office in a special election;

(3) An incumbent qualifying as a candidate to succeed himself or herself;

(4) A candidate seeking election in a nonpartisan election; or

(5) A nominee for a state-wide office by a duly constituted political body convention, provided that the political body making the nomination has qualified to nominate candidates for state-wide public office under the provisions of Code Section 21-2-180.

15

(Emphasis added).

The question, then, is a narrow one: are presidential electors for independent candidates for President of the United States "candidate[s] required to file a notice of candidacy" by OCGA § 21-2-132, such that OCGA § 21-2-132 (e) requires them to file nomination petitions? Based on a plain reading of the text and context of OCGA § 21-2-132, we conclude that they are. See *Premier Health Care Investments, LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 39 (849 SE2d 441) (2020) ("[W]e must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.") (citations and punctuation omitted).

(a) Our conclusion is apparent from the relevant statutory text. OCGA § 21-2-132 (e) requires "[e]ach candidate required to file a notice of candidacy" to also file a nomination petition. In turn, OCGA § 21-2-132.1 makes clear that presidential electors are

"*candidates* for the office of presidential elector."  See OCGA § 21-2-132.1 (a) (independent candidates for the office of President of the United States must certify and file a slate of "*candidates* for the office of presidential elector") (emphasis added);[8] OCGA § 21-2-132.1 (b) (describing electors as "*candidates* for presidential electors" and stating that after the independent candidate for President of the United States certifies those candidates, they "shall then qualify for election to such office in accordance with Code Section 21-2-132") (emphasis added).[9]  And importantly, under OCGA § 21-2-132 (d) (1), "[e]ach elector for President . . . of the United States . . . desiring to have the names of his or her candidates for President . . . placed

---

[8] The complete text of OCGA § 21-2-132.1 (a) is as follows:
An independent candidate for the office of President or Vice President of the United States shall file with the Secretary of State not later than the Friday before the opening of qualifying for such office as provided in subsection (d) of Code Section 21-2-132 a slate of candidates for the office of presidential elector which such independent candidate has certified as being the presidential electors for such independent candidate.

[9] The complete text of OCGA § 21-2-132.1 (b) is as follows:
The candidates for presidential electors certified by an independent candidate for the office of President or Vice President of the United States shall then qualify for election to such office in accordance with Code Section 21-2-132.

17

on the election ballot shall file a notice of his or her candidacy."[10]  Id.

Thus, the plain language of the Election Code makes clear that candidates for the office of presidential elector are "candidate[s] required to file a notice of candidacy" by OCGA § 21-2-132.  See OCGA § 21-2-132 (e).

As a result, under OCGA § 21-2-132 (e)—the application of which is predicated on a candidate being "required to file a notice of candidacy" by OCGA § 21-2-132—each candidate for presidential elector is required to file "a nomination petition in the form prescribed in Code Section 21-2-170."  See OCGA § 21-2-132 (e).[11]

---

[10] The complete text of OCGA § 21-2-132 (d) (1) is as follows:
Each elector for President or Vice President of the United States, or his or her agent, desiring to have the names of his or her candidates for President and Vice President placed on the election ballot shall file a notice of his or her candidacy, giving his or her name, residence address, and the office he or she is seeking, in the office of the Secretary of State during the period beginning at 9:00 A.M. on the fourth Monday in June immediately prior to the election and ending at 12:00 Noon on the Friday following the fourth Monday in June, notwithstanding the fact that any such days may be legal holidays[.]

[11] Only one certified elector is required to file a valid nomination petition under OCGA § 21-2-132 (e) for the elector's independent candidate for office of the President of the United States to appear on Georgia's ballot.  See OCGA § 21-2-132.1 (c) ("An independent candidate for the office of President or Vice

(b) The linchpin of our statutory analysis is that presidential electors must file notices of candidacy pursuant to OCGA § 21-2-132 (d) (1).[12] So it bears emphasis that *every* party in this appeal—West,

---

President of the United States may certify a number of candidates for the office of presidential elector that is equal to or less than the number of presidential electors who may be elected from the State of Georgia.").

[12] As explained above, we reach this conclusion based on a plain reading of the statutory text. But we also note that this requirement makes sense when viewed in the context of the Election Code's recent statutory history. The requirement for presidential electors to file notices of candidacy is part of a broader statutory scheme that charges independent candidates for President with certifying a "slate of candidates for the office of presidential elector," and then requires the presidential electors themselves to "qualify for election to such office in accordance with Code Section 21-2-132." OCGA § 21-2-132.1. The enactment of OCGA § 21-2-132.1 in 2019 followed the General Assembly's 2017 amendment to OCGA § 21-2-132 (d) (1):

> (d) All political body and independent candidates shall file their notice of candidacy and pay the prescribed qualifying fee by the date prescribed in this subsection in order to be eligible to have their names placed on the election ballot by the Secretary of State or election superintendent, as the case may be, in the following manner:
> (1) Each ~~candidate for federal or state office~~ elector for President or Vice President of the United States, or his or her agent, desiring to have ~~his or her name~~ the names of his or her candidates for President and Vice President placed on the election ballot shall file a notice of his or her candidacy, giving his or her name, residence address, and the office he or she is seeking, in the office of the Secretary of State ~~either during the period beginning at 9:00 A.M. on the Monday of the thirty-fifth week immediately prior to the election and ending at 12:00 Noon on the Friday immediately following such Monday, notwithstanding the fact that any such days may be legal holidays, or~~ during the period beginning at 9:00 A.M. on the fourth Monday in June immediately prior to the

the West electors, the De la Cruz electors, the Secretary of State, the

Georgia Republican Party, and the challengers—agrees on that

point.[13]  One might think that by conceding this point—that OCGA

---

election and ending at 12:00 Noon on the Friday following the fourth Monday in June notwithstanding the fact that any such days may be legal holidays . . .

OCGA § 21-2-132 (d) (1) (modifications to reflect 2017 amendment).

With these 2017 changes, the revised OCGA § 21-2-132 (d) (1) conferred on presidential electors the responsibility of filing a notice of candidacy if they "desir[e] to have the names of his or her candidates for President . . . placed on the election ballot."  See OCGA § 21-2-132 (d) (1).  That is a significant change from the pre-2017 text, which placed the obligation to file a notice of candidacy on the independent candidate for President him or herself.  Compare OCGA § 21-2-132 (d) (1) (2016) ("All . . . independent candidates shall file their notice of candidacy . . . in the following manner: Each candidate for federal or state office . . . desiring to have his or her name placed on the election ballot shall file a notice of his or her candidacy.").

[13] See Brief of West and Al-Bari, et al., Case Nos. S25A0177, S25A0182, & S25X0184, at 16 ("The electors and candidate then file their notices of candidacy."); Brief of Clapp, et al., Case No. S25A0179, at 17 ("The General Assembly passed O.C.G.A. § 21-2-132.1 to require independent candidates for President to name their presidential electors *before the deadline for electors to file their notices of candidacy as required by O.C.G.A. § 21-2-132(d)(1).*") (emphasis added); Brief of Secretary of State, Case Nos. S25A0180 & S25A0182, at 12 (acknowledging that "the electors must also file notices of candidacy and qualify"); Brief of Georgia Republican Party, Inc., Case No. S25A0181, at 12 ("[U]nder the current statute, both types of candidates must file a notice of candidacy."); Brief of Pigg, et al., Case Nos. S25A0177, S25A0179, S25A0180, S25A0181, & S25A0182, at 7 ("[E]ach candidate for presidential elector must file a notice of candidacy."); Brief of Wittenstein, et al., Case No. S25A0178, at 16-17 ("[I]ndependent presidential elector candidates must file . . . a timely notice of candidacy.").

And the Georgia Republican Party appears to go further by conceding that electors must file both a notice of candidacy *and* an election petition under

20

§ 21-2-132 (d) (1) requires electors for independent candidates for President to file a notice of candidacy—the Appellants have already lost their argument: given that OCGA § 21-2-132 (e) states that "candidate[s] required to file a notice of candidacy by this Code section" must file a nomination petition, and that all parties to this appeal agree that each presidential elector is required to file a notice of candidacy, it stands to reason that each presidential elector is required to file a nomination petition under Georgia's Election Code.

However, Appellants West, the West electors, and the Secretary of State resist that conclusion. They contend that even though presidential electors are required to file a notice of candidacy under OCGA § 21-2-132 (d) (1), those presidential electors are not "*candidate[s]* required to file a notice of candidacy by this Code Section" under OCGA § 21-2-132 (e) (emphasis added), because they

the Election Code. See Brief of Georgia Republican Party, Inc., Case No. S25A0181, at 12 (the 2017 amendment to § 21-2-132 (d) (1) "clarified that the requirement to file a notice of candidacy applied to presidential electors," and "even under the current statute, both types of candidates must file a notice of candidacy, and must file a petition with it under O.C.G.A. § 21-2-132 (e) unless they are exempt.").

are described only as "electors"—not "candidates"—in OCGA § 21-2-132 (d) (1).

That strained argument finds no real support in the text or context of OCGA § 21-2-132. Indeed, presidential electors are expressly described as "candidates" three times in OCGA § 21-2-132.1—the statutory provision the General Assembly enacted in 2019 against the backdrop of OCGA § 21-2-132 (e), which already established that nomination petitions were required to be filed by "candidate[s] required to file a notice of candidacy." See OCGA § 21-2-132.1 (a) (requiring independent candidates for President to certify a slate of "*candidates* for the office of presidential elector") (emphasis added); OCGA § 21-2-132.1 (b) ("The *candidates* for presidential electors certified by an independent candidate for the office of President or Vice President of the United States shall then qualify for election to such office in accordance with Code Section 21-2-132.") (emphasis added); OCGA § 21-2-132.1 (c) ("An independent candidate for the office of President or Vice President of the United States may certify a number of *candidates* for the office of

22

presidential elector that is equal to or less than the number of presidential electors who may be elected from the State of Georgia.") (emphasis added); OCGA § 21-2-132 (e).[14] It would be both strange (as a matter of statutory interpretation) and confusing (for presidential electors) to treat presidential electors as "candidates" in the provisions that require those presidential electors to qualify, see OCGA § 21-2-132.1, but *not* "candidates" for purposes of the very Code provision—OCGA § 21-2-132—with which the presidential electors are instructed to comply to qualify. See OCGA § 21-2-132.1 (b) ("The candidates for presidential electors certified by an independent candidate for the office of President or Vice President of the United States shall then qualify for election to such office *in*

---

[14] In fact, presidential electors have been described as "candidates" in OCGA § 21-2-285 (e) for almost 20 years, since at least 2005. See OCGA § 21-2-285 (e) ("When presidential electors are to be elected, the ballot shall not list the individual names of the *candidates for presidential electors* but shall list the names of each political party or body and the names of the candidates of the party or body for the offices of President and Vice President of the United States.") (emphasis added); Ga. L. 2005, p. 253, § 36. And the phrase "candidates for presidential electors" has been used in other provisions of the Georgia Code for almost 100 years. See, e.g., Ga. L. 1929, p. 339, § 2 (referring to "candidates for presidential electors" in the context of regulations pertaining to voting machines).

23

*accordance with Code Section 21-2-132.*") (emphasis added). We reject such a reading.

(c) The Secretary's argument that OCGA § 21-2-170 requires a different construction of OCGA § 21-2-132 (e) likewise fails. The Secretary contends that presidential electors are not required to file nomination petitions because OCGA § 21-2-170 does not state that independent candidates for President must submit separate nomination petitions for individual presidential electors, and because OCGA § 21-2-170 (c) suggests that presidential electors for independent candidates are not required to file nomination petitions.

The Secretary's first argument gets the statutory scheme backwards because OCGA § 21-2-132 (e), not OCGA § 21-2-170, speaks to who must file a nomination petition to ensure that an independent candidate for President appears on the Georgia ballot; OCGA § 21-2-170 merely prescribes the form of the nomination

24

petitions required by OCGA § 21-2-132 (e).[15]  See OCGA § 21-2-132

(e) (candidates required to file a notice of candidacy must file a

nomination petition "in the form prescribed in Code Section 21-2-

170").  And the Secretary's second argument fails because the only

portion of OCGA § 21-2-170 (c) he cites lays out an exception for

political bodies,[16] and that exception does nothing to change

statutory requirements for electors for independent candidates for

President.  See OCGA § 21-2-170 (c) ("*except* any political body

seeking to have the names of its candidates for the offices of

presidential electors placed upon the ballot through nomination

petitions shall . . . compile its petitions so that the entire slate of

---

[15] We need not resolve the West electors' claim that OCGA § 21-2-170 (b)'s reference to a signature requirement for voters "eligible to vote in the last election for the filling of the office the candidate is seeking" does not refer to the office of candidate for presidential elector.  Because no presidential elector filed a nomination petition in these cases, there is no question to be decided about how the signature requirements in OCGA § 21-2-170 (b) would apply to such a petition.

[16] The Georgia Election Code defines a "political body" as "any political organization other than a political party."  OCGA § 21-2-2 (23).  The Code defines "independent" as "a person unaffiliated with any political party or body and includes candidates in a special election for a partisan office for which there has not been a prior special primary."  OCGA § 21-2-2 (10).

candidates of such body for such office shall be listed together on the same petition") (emphasis added).[17]

(d) A final theory advanced by some of the Appellants also fails. They contend that the Election Code does not require presidential electors to file nomination petitions because OCGA § 21-2-132 (d) (1) and (e) could have, but do not, include additional text that would more clearly require presidential electors to file nomination petitions. The Secretary and the De la Cruz electors, for example,

---

[17] The full text of OCGA § 21-2-170 (c) reads:

Each person signing a nomination petition shall declare therein that he or she is a duly qualified and registered elector of the state, county, or municipality entitled to vote in the next election for the filling of the office sought by the candidate supported by the petition and shall add to his or her signature his or her residence address, giving municipality, if any, and county, with street and number, if any, and be urged to add the person's date of birth which shall be used for verification purposes. No person shall sign the same petition more than once. Each petition shall support the candidacy of only a single candidate, except any political body seeking to have the names of its candidates for the offices of presidential electors placed upon the ballot through nomination petitions shall not compile a separate petition for each candidate for such office, but such political body shall compile its petitions so that the entire slate of candidates of such body for such office shall be listed together on the same petition. A signature shall be stricken from the petition when the signer so requests prior to the presentation of the petition to the appropriate officer for filing, but such a request shall be disregarded if made after such presentation.

contend that the legislature could have modified OCGA § 21-2-132 (e) to include "electors" as well as "candidates" as it did in its amendment to OCGA § 21-2-132 (d) (1), but did not do so.

These Appellants are correct that the General Assembly could have further amended the Election Code after 2019 in any number of ways to clarify the requirements for electors for independent candidates for President to qualify and place their candidates on the ballot. But the possibility of improved precision does not support a different construction of the otherwise-clear statutory requirements in OCGA § 21-2-132 and OCGA § 21-2-132.1.[18]

---

[18] Appellants West and the West electors point out that under OCGA § 21-2-132 (f), candidates who are required to file an affidavit accompanying a notice of candidacy are required to include in the affidavit "the name as the candidate desires it to be listed on the ballot"—even though elector names are not listed on the ballot. But that apparent peculiarity does not change the clear statutory requirement for electors to file notices of candidacy under OCGA § 21-2-132 (d) (1) and nomination petitions under OCGA § 21-2-132 (e) to have their independent candidate for President placed on the ballot. See OCGA § 21-2-132 (f) (directing "candidate[s] required by this Code section to file a notice of candidacy" to "accompany his or her notice of candidacy with an affidavit" that, among other things, includes stating "[h]is or her full name and the name as the candidate desires it to be listed on the ballot"). See also OCGA § 21-2-285 (e) ("When presidential electors are to be elected, the ballot shall not list the individual names of the candidates for presidential electors but shall list the names of each political party or body and the names of the candidates of the party or body for the offices of President and Vice President

27

IV.   Green Party *and Constitutional Considerations*

Appellants contend that if, in fact, presidential electors are required to file nomination petitions under OCGA § 21-2-132 (e), and are required to do so "in the form prescribed in Code Section 21-2-170," then the Secretary's enforcement of the nomination-petition signature requirement set forth in OCGA § 21-2-170 (b) will run afoul of the injunction a federal district court entered with respect to OCGA § 21-2-170 (b) in *Green Party*, 171 FSupp.3d at 1374.[19]

Not so.  In *Green Party*, the district court permanently enjoined Georgia's Secretary of State from "enforcing the one percent

of the United States. The individual names or the nominees of each political party or body for such offices shall be posted at each polling place arranged alphabetically under the names of the candidates of the party or body for President and Vice President of the United States. *A vote for the candidates for President and Vice President of a political party or body shall be deemed to be a vote for each of the candidates for presidential electors of such political party or body.*") (emphasis added).

[19] Indeed, the Secretary's Final Decisions in the West and De la Cruz elector cases below were predicated on his assessment that requiring presidential electors to file nomination petitions in their own names "is contrary to a federal court order permanently enjoining the Secretary from requiring more than 7,500 signatures on a nomination petition for a candidate to obtain ballot access for the office of President of the United States."  See *Smith, et al. v. Al-Bari, et al.*, No. 2502870, Final Decision at 2 (Aug. 29, 2024); *Pigg, et al. v. Clapp, et al.*, No. 2502266, Final Decision at 2 (Aug. 29, 2024) (citing *Green Party*).

28

signature requirement in O.C.G.A. § 21-2-170 against presidential candidates," and as an "interim measure" reduced the number of valid signatures required on a nomination petition submitted by a presidential candidate to 7,500. See *Green Party*, 171 FSupp.3d at 1374. But the defect that prevents independent presidential candidates West and De la Cruz from appearing on Georgia's ballot does not pertain to the *number* of signatures acquired; it is that West's electors and De la Cruz's electors filed *no nomination petitions at all*.

Moreover, *Green Party*, which was decided before the General Assembly amended OCGA § 21-2-132 (d) (1) in 2017 and enacted OCGA § 21-2-132.1 in 2019, pertained to requirements for nomination petitions filed by "independent candidate[s] for President or a candidate for President representing a 'political body'" under OCGA § 21-2-170; it did not evaluate or decide any issue related to nomination-petition requirements for presidential electors. See *Green Party*, 171 FSupp.3d at 1372-1374. The injunction entered in *Green Party* in 2016 cannot be understood to

apply to statutory requirements (i.e., OCGA § 21-2-132 (d) (1) (as amended in 2017) and OCGA § 21-2-132.1 (enacted in 2019)) added to the Election Code years after that injunction was issued.

The West electors agree that the *Green Party* injunction cannot be applied to a later-enacted statute such as OCGA § 21-2-132.1, but contend "that does not end the inquiry." They and the other Appellants protest that all of the same constitutional concerns that animated the federal district court's injunction in *Green Party* are still present here, because applying a signature requirement under OCGA § 21-2-170 to presidential electors instead of to independent candidates for President is a distinction without a difference. But no constitutional challenge to the current statutory scheme for qualifying candidates for the office of elector of independent candidates for President is properly before this Court in these cases. We therefore express no view on any such constitutional questions today.

For all of the reasons explained above in Divisions III and IV, we affirm the decisions of the superior courts below.

V.  *Cross Appeal in Case No. S25X0184,* Pigg, et al. v. Raffensperger et al., *Regarding Remedy*

Shortly after this Court granted the discretionary applications Appellants filed in this set of cases, the Pigg challengers filed a cross-appeal contending that the relief the superior court ordered in the West elector cases was not enough, and that the superior court "erred by not instructing the Secretary of State to withhold or strike [Dr. West's] name from the ballot if there is sufficient time to do so." We see no error.

In entering a statutory remedy based on its conclusion that Georgia law requires a candidate for presidential elector to file a nomination petition in his or her own name, the superior court found that "it would be extremely difficult to reprint ballot[s] and remove Dr. West as an option before the election." It thus concluded "that there is insufficient time to strike the candidate's name or reprint the ballots."

Whether there is "insufficient time to strike the candidate's name or reprint the ballots," see OCGA § 21-2-5 (c), is a question of

31

fact, so the "any evidence" standard applies. See *Premier Health Care Investments, LLC*, 310 Ga. at 38. And evidence was presented from which the trial court could have concluded, as it did, that there was insufficient time to strike West's name from Georgia ballots. Moreover, the trial court was authorized to take judicial notice of the date and the deadline for mailing ballots, as it did here, in support of its finding of insufficient time to strike West's name or reprint the ballots. See OCGA § 24-2-201; OCGA § 24-2-220.

Because there was at least some evidence to support the trial court's finding, we affirm.[20]

VI. *Other Procedural Issues*

(a) *The Georgia Republican Party's appeal in Case No. S25A0183 must be dismissed.*

The challengers to the West electors (Al Bari, et al.) contend

---

[20] The Secretary's contention, raised in its appeal regarding the De la Cruz electors, that the relief the superior court ordered was too expansive also fails. The superior court cited and followed OCGA § 21-2-5 (c). To the extent the superior court ordered relief regarding printed ballots contingent on the Secretary's ability to comply with the order "and still meet applicable deadlines for mailing ballots," the Secretary's complaint that the remedy is erroneous presents nothing for our review; by its own terms, such relief is contingent on whether there is "[]sufficient time," id., and that is not a determination this Court can make in the first instance.

that the Georgia Republican Party's appeal in this Court in Case No. S25A0183 (*Georgia Republican Party, Inc. v. Pigg, et al.*), must be dismissed because the Georgia Republican Party was not a party to those proceedings below. To support this contention, the Al Bari challengers note that the Georgia Republican Party was not originally named as a respondent in the election contests challenging various aspects of West's qualifications for the Georgia ballot; its motion to intervene was never ruled upon in the appeal of the West elector action in the superior court; and it was not a party to the West appeal in Case No. S25A0178.

We have held that an entity that was not a party to the proceedings below cannot bring an appeal in a case in which the appellant filed a motion to intervene, but the trial court did not rule on the motion. See *Mar-Pak Michigan, Inc. v. Pointer*, 226 Ga. 146, 146 (173 SE2d 219) (1970) ("Only a party to the case can appeal from a judgment or one who has sought to become a party, as by way of intervention . . . , and has been denied the right to do so.") (citation and punctuation omitted). That holding applies to the Georgia

33

Republican Party here with respect to the West electors' appeal in this Court. See *Georgia Republican Party, Inc. v. Pigg, et al.*, Case No. S25A0183. Thus, the application for discretionary appeal (Case No. S25D0154) was improvidently granted. Accordingly, the order granting the application is vacated, the application is denied, and the Georgia Republican Party's appeal in Case No. S25A0183 is dismissed.

    (b)    *The superior court did not err in denying the motion to dismiss for failure to join an indispensable party with respect to De la Cruz.*

In their discretionary application and in their appeal before this Court, the De la Cruz electors (Clapp, et al.) contend that because Claudia De la Cruz was not joined as an indispensable party in the Pigg challengers' appeal to the superior court, see No. 24CV011040, the Pigg challengers' appeal in this Court must be dismissed or, alternatively, this Court should vacate the superior court's order concluding that none of De la Cruz's electors properly qualified to place De la Cruz on the ballot, and the case below challenging the qualifications of the De la Cruz electors (No.

34

24CV011040) should be dismissed.

Under OCGA § 9-11-19 (a), a "person who is subject to service of process shall be joined as a party in the action if:"

> (1) In his absence complete relief cannot be afforded among those who are already parties; or
> (2) He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>> (A) As a practical matter impair or impede his ability to protect that interest; or
>> (B) Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The De la Cruz electors do not cite OCGA § 9-11-19 (a). They nevertheless contend that De la Cruz did not receive the required notice from the Secretary of State that her candidacy was being challenged, see OCGA § 21-2-5 (b), that she has an independent interest in her candidacy, that she has a right to be made a party to the proceedings, and that striking her name from the ballot without making her a party violates her due process rights.

These claims fail. In denying the motion to dismiss, the superior court found that De la Cruz's "interests are adequately

35

protected by her candidates for presidential electors, who are Respondents herein." See *Pigg, et al. v. Raffensperger, et al.,* No. 24CV011040 (Sept. 11, 2024). We agree. Under OCGA § 9-11-19 (a) (1), complete relief can be afforded among those who are already parties to this appeal: the De la Cruz electors. That is because the Pigg challengers are contesting the qualifications of the De la Cruz electors, not the qualifications of De la Cruz as a candidate. And although De la Cruz has "an interest relating to the subject of the action," see OCGA § 9-11-19 (a) (2), the disposition of the De la Cruz electors' appeal in this Court (Case No. S25A0179) in her absence does not "[a]s a practical matter impair or impede [her] ability to protect that interest" or leave her "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [her] claimed interest," see OCGA § 9-11-19 (a) (2) (A) & (B), especially given that De la Cruz herself certified the electors who are parties to the action. Finally, the De la Cruz electors cite no authority for the proposition that the failure to join De la Cruz as an indispensable party to this action violates her due process

rights. For these reasons, we cannot say that the trial court erred by denying the motion to dismiss in No. 24CV011040, and the De la Cruz electors' claim in this Court fails.

*Judgments affirmed in Case Nos. S25A0177, S25A0178, S25A0179, S25A0180, S25A0181, S25A0182, and S25X0184. Appeal dismissed in Case No. S25A0183. All the Justices concur, except Peterson, P.J., disqualified in Case Nos. S25A0177, S25A0179, S25A0180, S25A0181, S25A0182, S25A0183, and S25X0184, and not participating in Case No. S25A0178.*