NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 28, 2025

S25A0104. DEAN v. STATE OF GEORGIA et al.

ELLINGTON, Justice.

Thomas G. Dean, representing himself, appeals from the dismissal of his challenge to the qualifications of candidates in the 2022 partisan election for the office of Georgia Labor Commissioner. Because he did not bring this challenge until after he had lost the Democratic primary election, and thus he failed to do everything within his power to have his claims decided before the election occurred, we dismiss his appeal without reaching the merits.

Dean was a losing candidate in the Democratic primary for Georgia Labor Commissioner held on May 24, 2022. Acting pro se, Dean challenged the qualifications of all other candidates in the Democratic and Republican primaries by filing a petition for

declaratory judgment against the State of Georgia on June 9, 2022.[1] Dean sought to be declared the sole qualified candidate for Labor Commissioner.[2]

Before filing his petition, Dean did not challenge the qualifications of the other candidates through the pre-election administrative process provided in OCGA § 21-2-5 (b).[3] And at the time of filing his petition, Dean did not file an affidavit verifying the petition pursuant to the requirement of OCGA § 21-2-524 (d) for post-election contests. On June 21, 2022, Dean filed a motion to add the Secretary of State and the Democratic and Republican Parties

---

[1] The primary election results were certified on June 6, 2022. A Democratic primary runoff for the office of Labor Commissioner was held on June 21, 2022, and the general election was held on November 8, 2022.

[2] The petition alleged that one of the candidates, Mike Coan, was ineligible to run under OCGA § 45-2-4 because he had been appointed Labor Commissioner for the remainder of the prior term of office, and that the other candidates were ineligible to run or hold office under OCGA §§ 45-10-22 and 45-10-25 (13) because they were business operators, owners, or entrepreneurs who continued to transact business beyond the time they qualified to run.

[3] That statute provides that, "[w]ithin two weeks after the deadline for qualifying, any elector who is eligible to vote for a candidate may challenge the qualifications of the candidate by filing a written complaint with the Secretary of State[,]" after which the matter must be referred by the Secretary of State to an administrative law judge. The applicable qualifying deadline in this case was March 11, 2022.

of Georgia as defendants, and for leave to file and serve an amended complaint reflecting the additional defendants.[4]  On July 5, 2022, Dean filed an amended petition.[5]  The Republican Party filed an answer and motion to dismiss on August 12, 2022,  and the State of Georgia and the Secretary of State ("the State defendants") filed an answer and motion to dismiss on August 15, 2022.  Dean filed a motion to file the affidavit required by OCGA § 21-2-524 (d) on September 5, 2022.  Between August 26 and October 10, 2022, Dean and the State defendants filed briefs on the motion to dismiss,  but there were no further filings relevant to Dean's claims on appeal during or after that period of time.

On May 20, 2024, the trial court granted the defendants' motions to dismiss for two reasons: Dean's failure to challenge the

---

[4] The trial court never entered an order granting this motion but did include the additional defendants in the case style on its order of dismissal.

[5] The amended petition included allegations that the candidates were "conspiratorially with" the original and additional defendants and that the Secretary of State "was negligent in not properly screening applicants for candidacy for [Georgia] Labor Commissioner, and did not file a challenge under [OCGA §] 21-2-5 (b)."  The amended petition also requested that all of the defendants be compelled to comply with OCGA §§ 45-2-4, 45-10-3, and 45-10-22.

3

other candidates' qualifications before the primary within two weeks of the qualifying deadline as required by OCGA § 21-2-5 (b); and Dean's failure to verify his petition by affidavit within five days of certification of the primary election results as required by OCGA § 21-2-524 (a), (d). Dean appealed to the Court of Appeals, which transferred the case to this Court pursuant to our exclusive appellate jurisdiction over "[a]ll cases of election contest." Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (2). See also *Cook v. Bd. of Registrars of Randolph County*, 291 Ga. 67, 68-71 (2) (a) (1-3) (727 SE2d 478) (2012).

Due to prudential considerations grounded in Georgia's Election Code, "litigants in election contests have a duty to expedite resolution of the dispute before an election is held, and the failure to make every effort to dispose of election disputes with dispatch before a subsequent election may result in the dismissal of the case." *Peterson v. Vie*, 320 Ga. 502, 504 (910 SE2d 191) (2024) (citation and punctuation omitted). As we have recently explained, "parties wanting a court to throw out the results of an election after it has

4

occurred must clear significant hurdles," and our precedent has, for decades, made it "crystal clear that the first such hurdle is for the parties seeking to undo an election to have done everything within their power to have their claims decided before the election occurred." *Ponder v. Davis*, 320 Ga. 532, 535 (910 SE2d 195) (2024) (citation and punctuation omitted).

More specifically, where the qualifications of a candidate are not challenged until after an election, the election contest ordinarily will be dismissed, and any appeal therefrom likewise dismissed, due to the challenger's failure to act with dispatch by filing a pre-election challenge and seeking to expedite the proceeding and stay the election. See *Ponder*, 320 Ga. at 536 (dismissing the appeal where the losing candidate never filed any pre-election challenge to the winning candidate's qualifications and never sought a stay of the election until an elector's pre-election challenge could be resolved); *Peterson*, 320 Ga. at 504-505 (dismissing the appeal in a post-primary proceeding where the delay in consideration and final disposition of a challenge to a candidate's qualifications was

5

attributable to the challenger's failure to seek to expedite a pre-primary proceeding or stay the primary). Dean argues that such principles do not apply here because his challenge was filed several months prior to the general election. But "the sort of policy considerations behind our prudential rule apply even more strongly in the context of an impending primary election." *Peterson*, 320 Ga. at 504 (citation and punctuation omitted).

Dean also makes two other arguments about the trial court's specific rulings that are relevant to his failure to act with dispatch. First, he argues that OCGA § 21-2-5 (b) does not require a challenger to follow its procedure for filing a complaint before challenging the qualifications of prospective candidates for public offices. As discussed above, however, the duty of a litigant in an election contest to expedite its resolution before the election is held is based on prudential considerations grounded in the statutory framework rather than statutory mandates. Accordingly, although this Court does have "authority to direct a trial court to declare an election result invalid and to call for a new election," we are not required to,

6

and generally will not, invoke such a "drastic remedy" where the challenger has failed to act with dispatch. *Peterson*, 320 Ga. at 504 (citation and punctuation omitted). That drastic remedy would be especially inappropriate here in view of Dean's complete failure to file a pre-election challenge and seek to expedite the proceeding and stay the primary election.[6]

Second, Dean points out that his petition was not filed as an election contest but as a petition for declaratory judgment. However, the principles animating our dismissals of election contests on prudential grounds apply with equal force to election contests brought through other legal vehicles such as the declaratory judgment suit here. See *Catoosa County Republican Party v. Henry*,

---

[6] We note that, even if Dean had taken all of the steps legally available to him to resolve his challenges to the other candidates' qualifications *before* the primary election, he still failed to utilize every available means to resolve those challenges *after* the primary election and before the general election. See *Peterson*, 320 Ga. at 505 n.4. Instead of promptly filing the affidavit required by OCGA § 21-2-524 (d) to verify his post-primary petition, Dean delayed resolution of his claims by waiting nearly three months before attempting to file the affidavit. At no time after the primary election did he request an expedited ruling, a stay of the general election, or an expedited appeal. Because of Dean's consistent failure to make use of those procedures, the total delay in resolving his claims has reached nearly three years.

319 Ga. 794, 798 (906 SE2d 750) (2024) ("[T]he same prudential reasons counseling dismissal in more traditional challenges to candidate qualifications or election results apply here, where the . . . Defendants assert their challenge to the Candidates' qualifications in a defensive posture" in a petition for a temporary restraining order and injunctive relief.). See also *Griggers v. Moye*, 246 Ga. 578, 579 (1) (272 SE2d 262) (1980) (Prior to the enactment of OCGA §§ 21-2-5 and 21-2-6, a complaint for declaratory judgment and injunctive relief based on the alleged ineligibility of a candidate was "not immune to the requirements of" the Election Code.). Cf. *Cook*, 291 Ga. at 70 (2) (a) (3) (citing *Griggers* in its discussion of what constitutes an "election contest").

For these reasons, we "dismiss the appeal without addressing the merits of [Dean's] enumerations of error regarding the [trial] court's rulings." *Ponder*, 320 Ga. at 536.

*Appeal dismissed. Peterson, CJ, and Bethel, McMillian, LaGrua, and Colvin, JJ, concur. Warren, PJ, and Pinson, J, concur specially.*

PINSON, Justice, concurring specially.

I agree with the majority that this appeal should be dismissed, but I disagree about why.

1. In my view, this case is moot in the traditional, jurisdictional sense. Dean challenges the qualifications of candidates for a primary election that determined the candidates for a general election, but both of those elections were carried out and certified years ago, in 2022. And Dean does not even ask to overturn those elections or call for new ones, see OCGA § 21-2-527, but merely for a judicial declaration about who was qualified to run in the primary. Dean has not explained how a declaration today about who was qualified in a primary election almost three years ago would give him any effective relief — other than possibly giving Dean the satisfaction of being right, which is not a kind of redress that supports the exercise of the judicial power. See *Sons of Confederate Veterans v. Henry County Bd. of Comm'rs*, 315 Ga. 39, 39 (880 SE2d 168) (2022) ("Courts are not vehicles for engaging in merely academic debates or deciding purely theoretical questions. We 'say what the law is' only as

needed to resolve an actual controversy."). And "[w]hen the resolution of a case would be tantamount to the determination of an abstract question not arising upon existing facts or rights," as when "the remedy sought in litigation no longer benefits the party seeking it," then "the case is moot and must be dismissed." *McAlister v. Clifton*, 313 Ga. 737, 738 (1) (873 SE2d 178) (2022) (citation omitted). Just so here.

2. Even if this case were not moot, for similar reasons, Dean has not established that he is entitled to a declaratory judgment. As we recently explained in another election-related decision, we have "repeatedly rejected claims for declaratory judgment when a declaration of rights would not direct the plaintiff's future conduct or involved only a determination of rights that had already accrued." *Cobb County v. Floam*, 319 Ga. 89, 97 (2) (901 SE2d 512) (2024). In what way would a declaration that certain candidates were not qualified to run in a primary election that was carried out and certified in 2022 "direct" Dean's future conduct or determine any rights that have not already accrued? To state the proposition is to

refute it, and Dean does not show otherwise, so his case is subject to dismissal for that reason as well.

3. Concluding that Dean's claims here fail for either of the reasons above would require only straightforward application of well-established law. Yet the majority instead chooses door number three: dismiss Dean's appeal based on a questionable expansion of our judge-made prudential doctrine that election contests must be brought and litigated "with dispatch," even though we have never applied that Election Code-based doctrine in a declaratory judgment action. In my view, that's the wrong choice. This dispatch doctrine is of doubtful validity as an original matter, and we should not needlessly expand it if the case can be resolved on another, sounder basis. To help show why the dispatch doctrine is the wrong choice here, I'll start with the history of that doctrine.

(a) We have long urged litigants who wish to contest elections to do so "with dispatch," but dismissing an election contest as a "prudential" matter because a litigant failed to act with dispatch is a more recent innovation.

As far as I can tell, we first mentioned the importance of acting with dispatch in election contests in 1978. In *Taggart v. Phillips*, 242 Ga. 454, 455 (249 SE2d 245) (1978), this Court admonished the parties for docketing their appeal over two months after the disputed primary election, forcing us to decide the appeal on an accelerated schedule. But we said nothing about any particular "duty" on election challengers to move as quickly as they could — only that their claims could become moot after the general election, see id. And despite the lack of dispatch, we resolved the appeal on the merits. See id.

After *Taggart*, we did not address a failure to bring an election challenge with dispatch for nearly twenty years. When we did, in *Payne v. Chatman*, 267 Ga. 873 (485 SE2d 723) (1997), we dismissed the appeal, but not merely because the appellant failed to seek to advance his case with dispatch. Instead, we dismissed the appeal based on "[t]he established rule in Georgia . . . that a primary election contest becomes moot after the general election has taken place." Id. at 875. In doing so, we noted the "many important policy

12

considerations" that "compel[led] us to adhere to the rule that litigants should make every effort to dispose of election disputes with dispatch and that the courts should not interfere with the orderly process of elections after the general election has been held," citing *Taggart*. Id. at 876. But we noted those considerations only as part of a discussion of why the case had become moot: because, as we explained there, the appellant failed follow the expedited procedures of the Election Code or seek expedited review in this Court, which led to the docketing of his appeal after the general election. See id.

After *Payne*, however, we started to expand the concept of "mootness" in election contests to support dismissing appeals that were not moot in the traditional sense. In *Caplan v. Hattaway*, 269 Ga. 582 (501 SE2d 195) (1998), for example, we dismissed as "moot" a challenge to the general election results after the general election happened. But that case was not moot for the same reasons as *Taggart* and *Payne*, which dealt with *primary* challenges that became moot once the general election happened. And effective relief

was still available to a successful challenger in *Caplan*: after all, the Election Code expressly allows election contests to be brought after a general election and expressly contemplates courts declaring such an election invalid and calling for a new one. OCGA § 21-2-527 (d). So the appeal in *Caplan* simply was not moot.

In *Caplan* and decisions that followed it, this unsupported expansion of the mootness doctrine in election contests also started to morph into our current "prudential" dispatch doctrine. We noted again in *Caplan* the "policy considerations which underlie 'the rule that litigants should make every effort to dispose of election disputes with dispatch,'" and cited the "delay in consideration of this appeal . . . attributable to" the appellant's lack of dispatch as the "circumstances" that required us to dismiss the appeal as "moot." *Caplan*, 269 Ga. at 583. A few years later, in *Jordan v. Cook*, 277 Ga. 155 (587 SE2d 52) (2003), we addressed another case that was not moot in the traditional sense because it involved a pre-election challenge to a primary candidate's qualifications, only the primary election had been held, and again, the Election Code authorized the

court to invalidate the primary election and call for a new one. See id.  Nonetheless, we said (for the first time, with no citation) that litigants have a "duty" to expedite their election contests; trained our attention on the set of things the challenger failed to do to expedite the challenge; and affirmed a dismissal for mootness because "[t]he policy considerations underlying our mootness doctrine appl[ied] to the election challenge in this case." Id. at 156. And a few years after that, in *McCreary v. Martin*, 281 Ga. 668 (642 SE2d 80) (2007), we cited this new "threshold duty" to act with dispatch and dismissed the appeal again because the "policy considerations underlying the mootness doctrine" applied.

Recently, we have recognized (correctly) that the principles we'd been applying in these cases were different from traditional mootness, and we did some work to disentangle these distinct concepts. In *Miller v. Hodge*, 319 Ga. 543) (905 SE2d 562) (2024), we explained that a claim is "moot" when "intervening events have rendered the relief sought impossible or pointless," and that label did not properly apply to claims brought under our Election Code's

15

procedures for election contests if the Code's new-election remedy was still available. Id. at 548 (1). Instead, we observed, "the cases declaring such election contests moot appear to be based on various prudential reasons for courts to limit their exercise of jurisdiction and to refrain from invalidating elections after the fact when the challenging party has not acted with dispatch to litigate their claims before a subsequent election." Id. We nevertheless went on to reaffirm this prudential doctrine, and because the challenger in *Miller* had not acted with enough dispatch in our view, those "prudential concerns . . . counsel[ed] us to dismiss" the appeal. Id. at 549 (1). And since *Miller*, we have applied the doctrine in the same way, holding that failure to advance an election contest with dispatch results in dismissal of the appeal. See *Peterson v. Vie*, 320 Ga. 502 (910 SE2d 191) (2024); *Ponder v. Davis*, 320 Ga. 532 (910 SE2d 195) (2024).

In sum, over a span of almost five decades, our decisions shifted from merely advising litigants that their cases could become moot if they did not advance them with dispatch, to imposing an extra-

statutory duty to act with dispatch, to recognizing a full-blown prudential doctrine that requires dismissal of an election contest if the challenger does not act with dispatch.

(b) This doctrine's somewhat accidental beginnings and shaky legal footing should give us serious pause about expanding it any further. Indeed, little of the doctrine's evolution recounted above looks very much like how courts are supposed to do law. Rather than interpreting and applying any law enacted by the legislature or ratified by the people of Georgia, we imposed on all election challengers a new "duty" found nowhere in our Election Code, with the harsh consequence of dismissal if they failed to act with "dispatch" — and courts get to decide in each case what amounts to sufficient dispatch. What's more, we have justified this duty in part by pointing to our Election Code's strict deadlines meant to expedite election contests, even though we have dismissed challenges under this doctrine when none of those statutory deadlines have been missed. See, e.g., OCGA § 21-2-524 (a) (providing that an election challenge must be brought "within five days after the official

17

consolidation of the [election] returns"). See also *Miller*, 319 Ga. at 549 (1) (dismissing timely appeal from timely election challenge because the policy considerations reflected in the Election Code "counsel the courts in limiting the exercise of jurisdiction"). We regularly reject arguments from parties that would "read into a statute language that the General Assembly did not enact." *State v. Wierson*, S24G1299 slip op. at ___ (May 27, 2025). See, e.g., *White v. State*, 305 Ga. 111, 118 (2) (823 SE2d 794) (2019) (court "was not authorized to write a 'relevance' exception into" the Rape Shield Statute); *Luangkhot v. State*, 292 Ga. 423, 427 (4) (736 SE2d 397) (2013). That rule applies to us too.

I do not mean to say that I am ready to abandon our dispatch doctrine. At least in the context of election contests, the doctrine may still have some basis in the statutory framework. For instance, if the Election Code's "drastic remedy" of invalidating an election has roots in or similarities to equitable remedies, it may be that the doctrine is analogous to defenses like laches and unclean hands that foreclose equitable relief. OCGA § 23-1-25 ("Equity gives no relief to one

18

whose long delay renders the ascertainment of the truth difficult, even when no legal limitation bars the right."); *Claire v. Rue de Paris, Inc.*, 239 Ga. 191, 194 (236 SE2d 272) (1977) ("Under the 'clean hands' maxim, whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him." (cleaned up)). And I suppose there might be constitutional limits on a court's power to unwind an election after too much time has passed. Cf. *Baker v. Carr*, 369 US 186, 217 (IV) (82 SCt 691, 7 LE2d 663) (1962) (describing the "political question" doctrine that "the impossibility of a court's undertaking independent resolution" of a case "without expressing lack of the respect due coordinate branches of government" puts the case beyond the power of the court to resolve). But cf. *Owens v. City of Greenville*, 290 Ga. 557, 558 (1) (722 SE2d 755) (2012) ("The fact that a controversy has political overtones does not place it beyond judicial review." (citation omitted)). And at the least, we have applied and reaffirmed the

doctrine for long enough — and have now supplied enough (strained) reasoning in support — that stare decisis probably preserves it in its current form. See *Jordan*, 277 Ga. 155; *McCreary*, 281 Ga. 668; *Miller*, 319 Ga. 543; *Peterson*, 320 Ga. 502; *Ponder*, 320 Ga. 532. See also *Wasserman v. Franklin County*, 320 Ga. 624, 645 (II) (B) (1) (911 SE2d 583) (2025) ("When we consider whether to follow one of our past decisions, stare decisis is the 'strong default rule.'" (citation omitted)).

But given the doctrine's doubtful footing, we should not expand it as the majority does here. Our past decisions have all applied the dispatch doctrine in cases brought under our Elections Code, and we have expressly said that the doctrine is "grounded in the statutory framework of OCGA § 21-2-520 et seq.," which provides that strict set of expedited deadlines and requirements for election contests. *Miller*, 319 Ga. at 549 (1). This action, of course, is not a petition brought under our Elections Code, but rather a declaratory judgment action brought under OCGA § 9-4-2. Applying our Elections Code-based doctrine to a case brought outside of the Code

unmoors it from even its weak tether to anything the legislature enacted. And it turns it into a freewheeling doctrine that allows courts to simply decline to resolve a case over which they have undoubted jurisdiction based on "policy considerations" that the legislature has yet to vote on. Seems like a bad idea to me.

*

The majority's expansion of our prudential dispatch doctrine is both unwise and needless. As I explained above, this appeal presents a classic case of mootness: a challenge to a primary after both the primary and general election have been held and certified that does not even ask us to invalidate either of those elections is well and truly moot. And if that were not enough, it also fails to present an actual controversy that warrants reaching the merits of Dean's claim for declaratory judgment. I would simply dismiss the appeal on either of those sound bases and have done with it.

I am authorized to state that Presiding Justice Warren joins in this special concurrence.